J. D. MACFARLAND V. WEST SIDE IMPROVEMENT ASSOCIA-
TION.

$\begin{array}{|cc|} 53 & 417 \\ s56 & 277 \end{array}$

FILED JANUARY 3, 1898.   No. 7635.

1. **Corporations: Stock: Liability of Subscriber.** The capital stock
of a corporation must be fully subscribed before an action will
lie against a subscriber to recover assessments thereon, unless by
law or charter provision the corporation is permitted to proceed
with its main design with a less subscription. (*Livesey v. Omaha
Hotel Co.*, 5 Neb. 50.)

2. ———: ———: ———: **Estoppel.** A subscriber may, however, by
his conduct, either waive or estop himself from setting up such a
defense.

3. ———: ———: ———. One who acts as treasurer of a corporation,
receives payment of assessments from other subscribers, himself
pays certain assessments, and disburses the funds of the corpora-
tion in carrying out its main object, is estopped to set up that
the stock has not all been subscribed, although at the time of
such acts he was ignorant of the deficiency.

4. ———: **Knowledge of Agent: Liability of Principal.** One
elected treasurer of a corporation, who with the consent of its
promoters permits an agent to perform all the active duties of
the office, but in the name of the treasurer, is responsible for the
consequences of the agent's acts as if they were his own, and is
charged with notice of all facts learned by the agent by reason of
his performance of such duties.

ERROR from the district court of Lancaster county.
Tried below before TIBBETS, J.   *Affirmed.*

*A. G. Greenlee* and *Lambertson & Hall*, for plaintiff in
error.

*Ricketts & Wilson*, contra.

IRVINE, C.

The West Side Improvement Association recovered a
judgment against Macfarland for certain unpaid assess-
ments on shares of its capital stock alleged to have been
by him subscribed. While several defenses were
pleaded, the questions here presented relate only to one,

31

—that the full amount of the capital stock, as fixed by the articles of incorporation, had not been subscribed. The capital stock was fixed at $200,000, and only a little more than $100,000 was subscribed. The general principle is well settled that a subscription does not become obligatory until the whole amount has been subscribed, unless the law or some provision of the articles permits the corporation to begin its effective work at an earlier stage. (*Livesey v. Omaha Hotel Co.*, 5 Neb. 50; *Hale v. Sanborn*, 16 Neb. 1; *Hards v. Platte Valley Improvement Co.*, 35 Neb. 263.) Everywhere a qualification is recognized in connection with this rule, and that is, that a subscriber may, by his conduct, lose the right to insist on its observance, and the crucial question here is whether Macfarland has so conducted himself as to lose that right. There is but little conflict in the evidence on this point. Macfarland subscribed for stock to the amount of $2,500, and paid two small assessments thereon. He was chosen treasurer of the corporation, and about that time was informed by some of its promoters that his services were desired in that capacity, and that he had been, or would be, elected. He did not desire the office, and so stated. He was then president of the First National Bank of Lincoln, and one Miller was a subordinate officer of the bank. Macfarland conceived that the corporation desired that the bank should have its account, and informed the promoters that if such was their wish Mr. Miller would take care of the money; that he, Macfarland, found his time fully occupied. He then said to Mr. Miller that he had been elected treasurer and had no time to attend to the business, and that if Miller would do so he might have any compensation that might accrue. Several witnesses testify to these conversations, and their accounts vary so slightly that the differences are clearly attributable to differences in the habits of expression of the witnesses, so that it would be dangerous to attribute any special force to the form of words employed by any one of them.

From the testimony. of all, the inference, evidently drawn by the trial court, is readily deducible that Macfarland did not decline the office, but accepted it with the understanding that Miller was to perform its active duties, receiving any compensation · it might afford.  Clearly, under such circumstances, Macfarland became the responsible officer, charged with whatever duties the office entailed, and trusting to Miller as his own agent, not that of the corporation, for the performance of those duties. Just here a matter of importance in the case, but presenting no legal difficulty, may appropriately be disposed of. Miller, being Macfarland's agent, Miller's acts as treasurer were in law those of Macfarland, and Miller's knowledge, acquired through his performance of those acts, is to be imputed to Macfarland himself.  An account was opened with the bank in the name of Macfarland as treasurer.  A note, made by some of the promoters, was discounted at the bank to obtain money to begin the work of the corporation, and its proceeds were credited to Macfarland in that account.  Assessments were made on the capital stock received by Miller, and also deposited in this account.  Among them were the two payments made by Macfarland himself.  The object of the corporation was to erect buildings for and maintain a normal school near Lincoln.  With the money so obtained the corporation proceeded to erect a large building, and for many weeks Miller, by checks drawn in the name of Macfarland, disbursed money in the payment of vouchers which showed on their face that they were for expenses incurred in the building operations.  Macfarland was thus charged with notice that the corporation was proceeding with its main object.  He did not know, and it does not appear that Miller knew, that the full amount of capital stock had not been subscribed.

It will be seen that Macfarland participated in the acts of the corporation by holding the office of treasurer, receiving subscriptions, and disbursing money for the purpose of carrying out its main object.  Such participa-

tion is generally said to waive the requirements of full subscription, or else to estop a subscriber from insisting thereon. The language of the cases has often been in this respect ambiguous, yet it is here very important to ascertain whether the liability arises in such case from waiver or by estoppel. If from waiver, which has in this connection been defined as the intentional relinquishment of a known right (*Livesey v. Omaha Hotel Co., supra*), Macfarland is not here precluded from making the defense, because he was ignorant of the deficiency in the subscriptions. We think that the loose use of language in the adjudicated cases has been due to a consciousness in the minds of the judges that the defense might be lost either by waiver or estoppel, and because it has not, in most cases, been necessary to distinguish between them, knowledge of all the facts and circumstances creating an estoppel concurring. There can be no doubt that a subscriber may waive the defense. So, too, when there has been no waiver because of ignorance of material facts, he may so conduct himself as to raise an estoppel. In *Musgrave v. Morrison*, 54 Md. 161, it was held that active participation in proceeding with the work of the corporation charged a subscriber, irrespective of his knowledge that the whole capital had not been subscribed. An instructive case is that of *President v. McConaby*, 16 S. & R. [Pa.] 140. The case antedates any we have seen cited directly on the subject, but the principle involved is the same. There a subscriber defended on the ground that the charter had been obtained by means of fictitious subscriptions for part of the stock. The court held that so far as the fraud was upon the state, the state alone could be heard to complain of it, and that so far as it affected the defendant, he could not be heard to complain if he had acted upon the charter, advertised the election of officers, and assisted, as the court says, "in putting the charter in motion;" that if he so acted, he was bound, although ignorant of the fictitious character of the subscriptions. We find nothing really opposed

to this view. While many cases speak of knowledge as an essential, they are cases where there was knowledge, or where the conduct of the subscriber had not been such as to create an estoppel *in pais*. While Macfarland undoubtedly acted in good faith, and without any intention of deceiving others, and while it is not shown that any particular person was induced to alter his position because of Macfarland's acts, still it is evident that every subscription paid, every obligation assumed by the corporation, every hour's work upon the building, was the resultant of the combined acts of defendant and other officers, who by proceeding held out the corporation as fully organized, with a lawfully available capital. The fact that others may have been induced to act is sufficient. (*Masonic Temple Ass'n v. Channell*, 43 Minn. 353.) It would be manifestly impossible in most cases to show that any particular subscriber had paid, or that any particular person had contracted with the association on the faith of the defendant's acts alone, and yet it is clear that his acts combined with others' influenced every dealing with the corporation. Although he was ignorant of the deficiency in subscriptions, he was ignorant when he might have known, and must bear the consequences. Any other rule would be highly inequitable.

Other questions argued are either rendered immaterial by the conclusion reached on this, or are so distinctly corollary thereto that they do not require separate notice.

Submitted with the case on its merits is a motion to strike from the record certain portions of the bill of exceptions. This motion is aimed at matter inserted by the trial judge in pursuance of an order made by this court remanding the record for the trial judge's action according to the facts. (*Macfarland v. West Side Improvement Ass'n*, 47 Neb. 661.) The proceedings seem to have been in accordance with the opinion and direction of this court as there expressed, and the motion is therefore overruled. The judgment of the district court is

AFFIRMED.