# Planters & Merchants Independent Packet Company *v.* Webb.

## *Action on Stock Subscription.*

[DECIDED Nov. 23, 1905, 39 So. REP. 562.]

1. *Corporations; Subscription to Stock; Requisites.*—Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both the subscriber and the corporation.
2. *Same; Action on Subscription; Validity.*—The signing of a subscription paper is an implied promise to pay the subscription, which may be enforced by the corporation after formation, although the subscriber made no cash payment, and the proceedings after incorporation were without notice to him.
3. *Same; Declaration; Defenses.*—It is no defense to an action to enforce payment on stock subscription by a corporation, that the corporation had not fully complied with the statutes providing for its incorporation, and the declaration need not specially allege a compliance with every circumstance relating to its organization requisite as a precedent to investing it with the powers conferred by its charter.
4. *Same; Statutes.*—The common law rule governing actions on stock subscriptions are of general and buiding effect unless the statute prescribes the particular method of subscription, as a condition precedent to its validity, and this acts 1903, p. 310 does not do.

APPEAL from Mobile Circuit Court.
Heard before Hon. SAMUEL B. BROWNE.

This is an action on subscription to stock of appellant corporation. The complaint originally filed was as follows:—The plaintiff which is a corporation, claims of the defendant the sum of one thousand dollars, due from

[Planters & Merchants Independent Packet Company v. Webb.]

him by account, on towit the first day of November, 1904, together with interest since said date, which sum of money is still due and unpaid. 2. And plaintiff claims of the defendant the said sum of one thousand dollars, in this that the defendant subscribed one thousand dollars to the capital stock of the plaintiff, while said corporation was being organized; that said subscription was made in 1904, prior to Nov. 1st.; that the same is due and unpaid, and plaintiff claims interest on said sum of money since November 1st, 1904.

Demurrers were interposed and sustained to this complaint, and plaintiff amended by adding the following: A. plaintiff, which is a corporation claims of the defendant the sum of one thousand dollars ($1,000.00), in this, that prior to the organization of said corporation, and while its organization was in contemplation, the defendant subscribed for the stock of said corporation to the amount of one thousand dollars, by writing his name, and the number of shares, and the amount to be paid for the same to a subscription list, which the said defendant understood was for the purpose of obtaining a sufficient number of subscribers and a sufficient amount of money subscribed to justify the formation of an independent packet company having a capital stock of twenty thousand dollars plaintiff avers that the full name of said Packet Company had not been agreed upon at the time the subscription was made, but that the defendant understood that said company should be organized as an independant packet company. Plaintiff further alleges that it, the plaintiff, is the same company which was in contemplation at the time the said defendant subscribed for stock of the same as aforesaid; Plaintiff further alleges that the defendant subscribed for said stock as aforesaid prior to the first day of November, 1904, and during the year 1904; that said subscription was due by the defendant, on towit, November 1st, 1904, but was not paid by him, and that it is still due and unpaid. And plaintiff also claims interest on said subscription since, towit, Nov. 1st, 1904." B. "And the plaintiff, which is a corporation, claims of the defendant the sum of one thousand dollars, in this that the defendant subscribed in writing for ten shares of the capital stock of the plaintiff, of the

nominal value of one thousand dollars, prior to the organization of said corporation; that said subscription was made in 1904, prior to the 1st day of November, 1904, that the amount of said subscription is due and unpaid, and plaintiff claims interest on said sum of money since towit, Nov. 1st, 1904.

Demurrers were sustained to this complaint, and plaintiff amended his complaint by adding count "C." which is substantially counts A & B: Demurrers were sustained to count C. Plaintiff amended them by striking out count first (1), and adding the following. "D". The plaintiff which is a corporation, claims of the defendant the sum of one thousand dollars in this that during the year 1904, prior to October 1st, 1904, the exact date being unknown to plaintiff, the defendant subscribed for stock of the said corporation to the amount of one thousand dollars, by writing his name and the number of shares which he desired, and the amount of money to be paid for the same, to a subscription agreement, the substance of which agreement was that the person signing the same were subscribing for the stock of the proposed corporation in the amount set opposite their names, but provided no time for the payment of said subscriptions and which agreement subscription was for the purpose, and which defendant knew was for the purpose, of obtaining a sufficient number of subscribers and a sufficient amount of money subscribed to justify the formation of an independant Packet company having a capital of twenty thousand dollars. Plaintiff avers that the full name of said packet company had not been agreed upon at the time said subscription was made, but that it was understood and agreed by the defendant and the other subscribers that said company should be organized for business and should operate as an independant packet company. Plaintiff further alleges that it, the plaintiff, is the company which was in contemplation of defendant at the time the defendant subscribed for stock, as aforesaid and that it organized and is doing business as an independant packet company, and that at the time said subscription was made, the defendant agreed and promised to pay the amount of said subscription at the time he was notified by the persons who were organizing said

corporation that the amount of said subscription was needed. Plaintiff further alleges that after said subscription was made and after the agreement aforesaid, two of the persons organizing said corporation, towit, P. R. Tunstall and J. T. Speith, on dates which are unknown to plaintiff but before the bringing of this suit, and after the incorporation of plaintiff, notified the defendant that the amount of his subscription was needed, and requested him to make prompt settlement of the same; that the defendant did not then repudiate said subscription, did not deny his liability to the plaintiff as a subscriber for said stock, and stated in substance that he would arrange a settlement in a short time. Plaintiff alleges that relying upon said subscription and promise of the defendants the plaintiff purchased a steam boat and incurred other necessary expenses in and about the repairing and managing said boat. And plaintiff alleges that the defendant did not arrange a settlement of said subscription as he promised to do, and did not pay the same; whereupon the board of directors of the plaintiff passed a resolution, at a metting of said board, in the month of October, 1904, the exact date of said meeting being unknown to plaintiff, in which resolution it was resolved that a call be made upon subscribers who had not paid their subscriptions demanding payment of them of the same, that pursuant to said resolution and before the bringing of this suit, a call was made upon defendant, notifying him that the amount of his subscription was needed and due and must be immediately paid, but that the defendant again failed to pay said subscription, and has ever since failed to pay the same or any part of the same. And plaintiff alleges that the amount of said subscription was due prior to November 1st, 1904, and plaintiff claims said amount of money together with interest since Nov. 1st, 1904.

Demurrers were sustained to this count, and plaintiff declining to plead further judgment was rendered for defendant, and hence this appeal.

McAlpine & Robinson, for appellants.—It makes no difference that the name of the corporation as organized is different from the corporation to which subscription

is made, provided it is organized as proposed in the prospectus.—*Lehman v. Glenn,* 6 South. 44; 20 Ency. Pl. & Pr. 683, et seq.

A stockholder is bound by his subscription though made before incorporation.—*Selma Co. v. Tipton,* 5 Ala. 787; 20 Ency. Pl. & Pr. 683; 26 Am. & En. Ency. Law (2nd ed.) "d" p. 902.

Any agreement by which a person shows an intent to become a stockholder is sufficient to bind him and the corporation. Formality in making the subscription is not necessary. A parol subscription is valid and binding. Cook on Cor. Vol. 1, (5th ed.) pp. 177-80, and notes; 26 Am. & Eng. Ency. Law (2nd ed.) § 2, p. 903.

It is *not necessary* that the subscription be to the *articles of incorporation.*—*San Joaquin Co. v. Beecher,* 101 Cal. 70; 1 Cook on Corp. (5th ed.) p. 181, and notes.

A contract of subscription to stock of a corporation is not within the statute of frauds.—26 Am. & Eng. Ency. Law, (2nd ed.) "b" p. 905.

Although the statute provides for subscription either by an original subscription to the articles of incorporation, or after incorporation, by subscription to books to be opened, subscriptions may be made that are binding in other ways.—Cook on Corp. Vol. 1, p. 191, and notes.

A promise to subscribe for a certain amount of stock to induce the company to adopt a certain route, was held enforcible, though no formal subscription was ever made. *Musgrave v. Morrison,* 54 Md. 161; *Rhey v. Ebensburg etc. Co.,* 27 Pa. St. 261.

Even if it can be contended that the original contract of subscription was not binding the defendant ratified and confirmed the same and bound himself thereby after the formation of the corporation.

FITTS & STOUTZ, for appellee.—Our contention in the case at bar is just this: Under the machinery for the organization of business corporations provided by act of October, 1903, Gen. Acts, 1903, p. 310, et seq. the preliminary promise to subscribe for stock and other steps prior to making and filing the *certificate,* required to be signed by all the subscribers to the capital stock are provisional

[Planters & Merchants Independent Packet Company v. Webb.]

and inchoate, creating no fixed right, and imposing no obligation on the parties.

Nothing done prior to the issuance of the commission did or could amount to a subscription to the capital stock of the proposed corporation.—*Knox v. Childersburg Land Co.*, 86 Ala. 180.

The act above mentioned requires that the "Certificate of incorporation shall be signed by all the subscribers to the capital stock named therein." Sub. "f" of Sec. 2 answers and repels the suggestion that there are or may be original subscribers other than those whose names are signed and set out in the certificate by saying "the aggregate of such subscriptions shall be the capital stock with which the company (is to) commence business."

When the whole of this act is read and construed together, "there is an invincible implication that only those who sign the articles, and such others as subsequently acquire a right to stock shall be members of the corporation. I do not see how it is possible that one who has stopped short, before signing the articles, can be a corporator, or be entitled to stock; and if he is not entitled to stock he certainly ought not to be compelled to pay for same." *Poughkeepsi Point Plank Road Co. v. Griffin,* 24 N. Y. 154.

There is no allegation in the complaint or any of the amendments that Webb has ever gotten any of the stock, or that it has been tendered him, or that it was held out for him and treated as his. For aught that appears, the company may have turned around and sold that stock to some other person at par or may still have and own it and may sell at any time. The suit is now against the defendant for the full par value of the stock and yet he may get nothing, and certainly in this action can get nothing. His promise in that regard is exactly like any other promise or agreement to buy any other specific article or property of any kind.—*Thrasher v. Pike Co. R. R. Co.,* 25 Ill. 340; *Lake Ontario S. R. R. Co. v. Curtiss,* 80 N. Y. 219; Morawitz Corp., last half Sec. 50, p. 50 at top.

The very recent case of *Hamilton v. Finnegan,* 91 N. W. Rep. 1039, is in point. We call the court's attention

to the long line of sustaining authorities cited by the Iowa court without repeating them by name.

The complaint does not allege a call for these subscriptions in the regular way. Without such call no action can be maintained thereon.—*Teague v. Legrand,* 85 Ala. 495, and this is still the law notwithstanding a statute passed since the decision allowing creditors to reach unpaid subscriptions by garnishment though no regular call has been made.—*Roman v. Dimick,* 123 Ala. 375.

The complaint alleges no subscription except a preliminary subscription among promoters and fails wholly to state that this preliminary subscription was confirmed by any particular act or participation in the regular proceedings or the signing of the regular certificate. The preliminary subscription is therefore a mere offer, revocable in its nature, and the count is defective for not showing that the offer was ever accepted in the proper way.—*Knox v. Land Co.,* 86 Ala. 180.

HARALSON, J.—The rules binding a subscriber for the stock of a corporation, as gathered from the books on the subject, may be thus stated: A contract of subscription may be entered into in various ways. "Whenever an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. It is, as in the case of other contracts, very much a question of intent. Formal rules are for the most part disregarded. and in general a contract of subscription may be made in any way in which other contracts may be made. Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation."—1 Cook on Corp. § 52; 26 Am. & Eng. Ency. Law (2nd ed.) 902-3.

"The signing of the subscription paper is an implied promise to pay the subscription."

That "a subscription for stock implies a promise to pay for it, even though the subscription was before incorporation is the rule sustained by the great weight of authority."—1 Cook on Corp. §§ 71, 75; 26 Am. & Eng. Ency. Law, 902; 1 Morawetz on Corp. §§ 47, 54. A subscriber may be bound by an actual subscription made be-

fore incorporation, or organization, although he makes no cash payment, and the proceedings after incorporation are without notice to him.—26 Am. & Eng. Ency. Law, 902.

"A direct subscription to take stock may be enforced by the corporation, even though such subscription was made prior to the incorporation. An agreement reading 'the undersigned hereby subscribe for the number of shares set opposite our names,' may be enforced by the corporation when it is formed."—Ib. §§ 73, 75.

"When an action is brought to collect a subscription, either directly or indirectly for the benefit of corporate creditors, it is well established that the subscribers cannot defeat such action by the defense that the corporation was not an incorporation, by reason of its not having fully complied with the terms of the statute providing for such an incorporation. Not only is the subscriber estopped, by the act of subscribing, from setting up this defense, but he is bound also by the rule, that the existence of a corporation cannot be enquired into except by a direct proceeding in behalf of the State." Ib. 184.

In *San Joaquin L. & W. Co. v. Beecher*, 101 Cal. 79, it is held that it is "not necessary to the validity of the corporation, or to the subscribers becoming stockholders, that they should all sign the articles of incorporation. Those who sign articles of incorporation act as the agents of the others. * * * * These preliminary agreements inured to the benefit of the corporations thereafter formed. as contemplated by the agreements. * * * * To constitute the subscribers stockholders it was not necessary that the certificates of stock should have issued to them."

In the *Selma & Tenn. R. Co. v. Tipton case*, 5 Ala. 787, it was held, (quoting from the head-notes which appear to be accurate,) that "In an action by a corporation, the declaration need not specially allege a compliance with every particular circumstance relating to its organization, which is required in order to its becoming invested with the privileges and powers conferred by its charter. Although it may be necessary to prove these matters specially, the allegation may be more general. A regular

43

subscription for shares in the stock of an incorporated company, whether made previous to its organization or not, if 'it organizes as provided by the charter, imports in itself a sufficient consideration, and may be declared on as the foundation of an action. * * * * A subscriber for stock in an incorporated company to whom the charter does not accord that privilege, cannot withdraw from the company, and thus avoid the liability to pay for it."

The foregoing are some of the common law rules in respect to the obligations of persons subscribing for stock in corporations, and are of general and binding effect, except as they may have been changed by statute, for where the statute prescribes the method of subscription, a subscription made in any other way cannot be enforced. 1 Cook on Cor. § 73. But, if the statute does not prescribe the particular method of subscription, as a condition precedent to the validity of the subscription, the ordinary, common law rules applicable to subscriptions will obtain. The act of 1903, (Acts 1903, 310), like that in the Code for the organization and regulation of a corporation, (Code, §§ 1255, 1260) have many similar provisions for its organization and the subscriptions of stock thereon; but in neither is it provided that unless specified conditions are complied with, a subscription shall not be binding. Under the latter act, as we have seen, it has been held, where the conditions of subscription are not conditions precedent to the binding obligation of a subscription, they may be binding though not formally or even if irregularly made, and the same principle applies in construction of the latter act. Under the facts set up in the complaint, and which under it are authorized to be proved, we have been unable to discover, why the same does not state a good cause of action. The demurrer to the same should have been overruled.

Reversed and remanded.

DOWDELL, SIMPSON and DENSON, JJ., concurring.