NEBRASKA CHICORY COMPANY, APPELLANT, V. ANTON LEDNICKY, APPELLEE.

FILED JULY 12, 1907.   No. 14,779.

1. Corporations: SUBSCRIPTION TO STOCK. Any agreement by which a person shows an intention to become a stockholder in a corporation is sufficient as a contract of subscription, as against both himself and the corporation.

2. ———: ———. A subscription by a number of persons to the stock of a corporation, to be thereafter formed by them, constitutes a contract between the subscribers themselves to become stockholders when the corporation is formed, upon the conditions expressed in the agreement, and, as such, it is binding and irrevocable from the date of the subscription. It is in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it, becomes as to each subscriber a contract between him and the corporation.

3. ———: ———. Such contract is based upon a sufficient consideration. There is a mutuality of promise in the act of the particular subscriber in subscribing with others which obliges him to make good his promise to the corporation after it comes into existence.

4. ———: ———: ACTION. A subscription to corporate shares, made before the corporation comes into existence, but accepted by the corporation after coming into existence, either expressly by issuing the share certificates, or impliedly by recognizing the sub-

scriber as a shareholder, makes him a shareholder, and the corporation may maintain an action upon the subscription against the signers.

5. ——: ——: STATUTORY PROVISION. Section 39, ch. 16, Comp. St. 1905, authorizing the opening of books for stock subscriptions, does not limit the right of individuals to subscribe for stock by special agreement for that purpose made either before or after the filing of the articles of incorporation.

APPEAL from the district court for Cuming county: GUY T. GRAVES JUDGE. *Reversed.*

*G. W. Wertz* and *Moodie & Burke,* for appellant.

*A. R. Oleson, contra.*

EPPERSON, C.

In February, 1897, certain citizens of Schuyler, Nebraska, united in a movement for the organization of a company for the manufacture of chicory at that place. Articles of incorporation were prepared and discussed on one or more occasions by the interested parties, and during said month a written agreement, of which the following is a copy, was prepared and circulated and signed by a considerable number of persons, the signature of the defendant being attached thereto as below indicated: "We the undersigned do hereby agree to take shares of stock in the Nebraska Chicory Company of Schuyler, Nebraska, to be organized on the plan set forth in the articles of incorporation, and we agree to pay for the number of shares set opposite our respective names in accordance with the by-laws, rules and regulations of the company, which provide for a division of the capital stock of $50,000 in shares of $50 each, to be paid in monthly instalments of 4 per cent. per month, beginning on the first Saturday of March, 1897. (Signed.) Anton Lednicky, 5 shares." Some time after the defendant signed the foregoing, and on or about March 8, 1897, a certificate of incorporation was filed with the county clerk, and with the secretary of state on March 25. Section 4138, Ann. St., provides that upon this latter filing the organ-

ization should be deemed completed and the persons whose names are subscribed thereto be deemed a body corporate. Section 4140 is as follows: "The persons named in the certificate of incorporation, or a majority of them, shall be commissioners to open the books for the subscription to the capital stock of said company, and at such time and places as they shall deem proper, and the said company are authorized to commence operations upon the subscription of ten per cent. of said stock." No stock subscription book, other than the paper above set out, was opened by the authority of the corporation, but that body proceeded to transact business by the purchase of grounds and the erection of buildings and supplying the same with fixtures and machinery, chicory, etc., and the defendant, for eight months consecutively, paid into its treasury monthly instalments of $10 each pursuant to the terms of his agreement. On June 29, 1897, the president and secretary executed and delivered to him a paper certifying that he had subscribed for five shares of the capital stock of the company and would be entitled to the same "upon the surrender of this certificate and compliance with the rules and by-laws of this company." For this "certificate of entitlement," as it was called, he subscribed and delivered to the company a written receipt. He ceased to pay on and after the ninth instalment, and this is an action to recover the unpaid residue upon his promise of subscription above copied. At the close of plaintiff's evidence the court directed a verdict for defendant. Plaintiff appeals.

The principal question for determination is whether the written agreement for subscription to the capital stock of the corporation is a contract which the corporation can enforce? It appears that more than 10 per cent. (about $20,000) of the capital stock had been subscribed before the company began business; that the paper signed by defendant and other subscribers was the only subscription book used or kept by the company; that defendant signed the instrument before the time of the filing of the articles

of incorporation, and had paid $80 on his subscription before this suit was instituted. It was held in *Bolton v. Nebraska Chicory Co.*, 69 Neb. 681, that this identical corporation is a manufacturing corporation, the court saying: "The statute here in question was obviously designed to encourage the promotion of manufacturing enterprises of all kinds, in the widest sense, by relaxing the rules as to organization. There is every reason for giving it a liberal construction, and no fraud can result from so doing."

Defendant contends, however, that one who signs a subscription paper, whereby he agrees to take a certain number of shares in a corporation thereafter to be formed, does not become liable as a shareholder, even after the corporation is formed, and the corporation cannot maintain an action against him upon the subscription paper. There are courts, notably Kansas, Massachusetts, Michigan, Pennsylvania and West Virginia, which hold to this doctrine. *Nemaha Coal & Mining Co. v. Settle & Keith,* 54 Kan. 424; *Hudson Real Estate Co. v. Tower,* 161 Mass. 10; *Shurtz v. Schoolcraft & T. R. Co.,* 9 Mich. 269; *Northern C. M. R. Co. v. Eslow,* 40 Mich. 222; *International F. & E. Ass'n v. Walker,* 88 Mich. 62; *Plank's Tavern Co. v. Burkhard,* 87 Mich. 182; *Muncy Traction Engine Co. v. Green,* 143 Pa. St. 269; *Auburn Bolt and Nut Works v. Shultz,* 143 Pa. St. 256; *Greenbrier Industrial Exposition v. Rodes,* 37 W. Va. 738. See decisions cited in 10 Cyc. 385, note 97, and 386, note 99. Also *Thrasher v. Pike County R. Co.,* 25 Ill. 393; *Sedalia, W. & S. R. Co. v. Wilkerson,* 83 Mo. 235; *Coyote Gold & Silver M. Co. v. Ruble,* 8 Or. 284.

The doctrine of these cases cannot be regarded as settled in American law. "This rule proceeds upon the narrow and strict ground that a contract, such as will bind the intending obligors, must be tendered to the other contracting party, to an artificial being not yet *in esse,* and in the precise statutory mode, or not at all." 10 Cyc. 386, note 2.

It is said that this court is committed to the rule of the cases above cited, and our attention is called to *Livesey v. Omaha Hotel Co.,* 5 Neb. 50, and *Macfarland v. West Side Improvement Ass'n,* 53 Neb. 417. In *Livesey v. Omaha Hotel Co., supra,* the sole ground upon which the defendants were held not liable upon their subscription was that the specified amount of capital stock was not subscribed for; and in *Macfarland v. West Side Improvement Ass'n, supra,* the same principle was announced, to wit, that the subscriber was not liable upon his subscription until the capital stock was fully subscribed for, "unless by law or charter provision the corporation is permitted to proceed with its main design with a less subscription." In that case, however, it was held that the defendant was estopped by his conduct to deny his liability. Neither of the above cases have any application to the case at bar, since the statute under which this corporation was formed provides that the corporation may commence operations upon the subscription of 10 per cent. of its capital stock. In *Lincoln Shoe Mfg. Co. v. Sheldon,* 44 Neb. 279, it is held that a contract as follows: "For value received we, the undersigned subscribers, hereby bind ourselves to purchase the number of shares of stock set opposite our respective names in the Lincoln Shoe Manufacturing Company at fifty dollars per share"—upon several conditions recited, was a subscription to the stock of the corporation. This case, however, may be distinguished from the case in hand. In that case, the subscription paper was signed after the articles of incorporation were filed. In the case at bar, it was alleged, and we understand the evidence to show, that the defendant placed his name to the subscription paper prior to the filing of the articles of incorporation. Therefore, whether defendant herein is liable to the corporation on the subscription paper we deem an open question in this state.

Mr. Seymour D. Thompson in his excellent article on "Corporations" in 10 Cyc. 385, *et seq.,* discusses the doctrine for which defendant contends as follows: "The theory

of these cases seems to be that if a number of coadvent-
urers mutually agree to subscribe for shares in a corpora-
tion thereafter to be formed, this does not amount to an
irrevocable contract to become shareholders when the cor-
poration is formed; but they must perform the additional
act of executing the statutory contract of membership by
signing and acknowledging the articles of association
where the corporation is unformed, or by entering their
names on its stock-book where it is formed. This theory
is that until this additional act is performed there is no
offer which the corporation, when formed, or even if
already formed, can accept, and that the subscribers do not
therefore become shareholders and liable to be charged
as such, unless they choose to carry out their agreement
by subscribing for the shares. This doctrine, which treats
preliminary share subscribers to corporations not yet
formed with the utmost levity, which ignores the prin-
ciple, hereafter explained, that such subscriptions are
mutual promises among the subscribers as toward each
other, that this mutuality of promise constitutes a suf-
ficient consideration for such a subscription, and that it
is none the less so because the promise is made to a third
person, the corporation, which is not yet *in esse,* has been
taken up and adopted by a good many modern courts."
See "Consequences of Rule." 10 Cyc. 387. In view of
the liberal construction given our statute (*Bolton v. Ne-
braska Chicory Co., supra*), we think the rule for which
defendant contends proceeds upon too strict and narrow
grounds and should not be adopted in this state. There
is good authority for our conclusion. The same learned
author further says in 10 Cyc. 388, 389: "Many courts,
expressing their reasoning in various ways, have reached
the conclusion that a subscription to corporate shares
made before the corporation comes into existence, but
accepted by the corporation after coming into existence,
either expressly by issuing the share certificates, or
impliedly by recognizing the subscriber as a shareholder
and by extending to him the rights which pertain to that

relation, makes him a shareholder. The subscription paper may be informal, yet if the intent of the subscription can be collected from it, as where it states the names and residences of the shareholders, and the number of shares taken by each, it constitutes a subscription to shares of the forthcoming corporation, and the corporation may maintain actions upon it against the signers"—citing *Mahan v. Wood,* 44 Cal. 462; *Glenn v. Busey,* 5 Mackey (D. C.), 233; *Johnston v. Ewing Female University,* 35 Ill. 518; *Tonica & P. R. Co. v. McNeely,* 21 Ill. 71; *Cross v. Pinckneyville Mill Co.,* 17 Ill. 54; *New Albany & S. R. Co. v. McCormick,* 10 Ind. 499; *Nulton v. Clayton,* 54 Ia. 425; *Penobscot R. Co. v. White,* 41 Me. 512; *Penobscot R. Co. v. Dummer,* 40 Me. 172; *Kennebec & P. R. Co. v. Palmer,* 34 Me. 366; *Thompson v. Page,* 1 Met. (Mass.) 565; *Michigan & C. M. R. Co. v. Bacon,* 33 Mich. 466; *Red Wing Hotel Co. v. Friedrich,* 26 Minn. 112; *Ashuelot Boot & Shoe Co. v. Holt,* 56 N. H. 548; *Lake Ontario, A. & N. Y. R. Co. v. Mason,* 16 N. Y. 451; *Yonkers Gazette Co. v. Taylor,* 30 N. Y. App. Div. 334; *Hamilton & Deansville P. R. Co. v. Rice,* 7 Barb. (N. Y.) 157; *Bell's Appeal,* 115 Pa. St. 88; *Gleaves v. Brick Church Turnpike Co.,* 1 Sneed (Tenn.), 491; *Belton Compress Co. v. Saunders,* 70 Tex. 699.

In *Planters & Merchants I. P. Co. v. Webb,* 39 So. 562 (144 Ala. 666), it was held: "Any agreement by which a person shows an intention to become a stockholder in a corporation is sufficient as a contract of subscription as against both him and the corporation." A subscription by a number of persons to the stock of a corporation to be thereafter formed by them, constitutes a contract between the subscribers themselves to become stockholders when the corporation is formed, upon the conditions expressed in the agreement, and as such it is binding and irrevocable from the date of the subscription. It is in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it, becomes as to each subscriber a contract between him and the corporation. See *Minneapolis*

41

*Threshing M. Co. v. Davis,* 40 Minn. 110, 3 L. R. A. 796. Such a contract is based upon a sufficient consideration. Such subscriptions are mutual promises among the subscribers as toward each other, and this mutuality of promise among the subscribers constitutes a sufficient consideration for such a subscription. There is in the act of the particular subscriber, in subscribing with others, a mutuality of promise which obliges him to make good his promise to the corporation after it comes into its existence. 10 Cyc. 394, note 58, and cases there cited. "Whenever an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. It is, as in the case of other contracts, very much a question of intent. Formal rules are for the most part disregarded. And in general a contract for subscription may be made in any way in which other contracts may be made. Any agreement by which a person shows an intention to become a stockholder is sufficient to bind him and the corporation." 1 Cook, Corporations (5th ed.), sec. 52; 26 Am. & Eng. Ency. Law (2d ed.), 902, 903. "That a subscription for stock implies a promise to pay for it, even though the subscription was before incorporation, is the rule sustained by the great weight of authority." 1 Cook, Corporations (5th ed.), secs. 71, 72, 75; 26 Am. & Eng. Ency. Law (2d ed.), 902; 1 Morawetz, Corporations (2d ed.), secs. 47, 54. We gather this proposition from the decisions and think it is sustained by the weight of authority: A subscription to corporate shares, made before the corporation comes into existence, but accepted by the corporation after coming into existence, either expressly by issuing the share certificates, or impliedly by recognizing the subscriber as a shareholder, makes him a shareholder and the corporation may maintain an action upon the subscription against the signers.

It is argued, however, that the subscription in the case at bar is invalid because not entered by the commissioners in the corporate books as provided by section 4140, Ann.

St. As a general rule, "unless the charter or governing statute so provides, it is not necessary to the validity of the subscription that it should be originally made in a book prepared for that purpose." 10 Cyc. 392. We believe our statute should be liberally construed, and are of opinion that the true rule is that, although the statute provides for the opening of books, the use of subscription papers in the first instance instead of a book does not make the suscription void. 10 Cyc. 392, citing in note 43: *Brownlee v. Indiana & I. R. Co.,* 18 Ind. 68; *Hamilton & D. P. R. Co. v. Rice,* 7 Barb. (N. Y.) 157; *Ashtabula & N. L. R. Co. v. Smith,* 15 Ohio St. 328; *Mobile & O. R. Co. v. Yandal,* 5 Sneed (Tenn.), 294; *Stuart v. Valley R. Co.,* 32 Grat. (Va.) 146. "Inasmuch as acts 1903, p. 310, containing provisions for stock subscriptions, does not provide that unless the specified conditions are complied with a subscription shall not be binding, a subscription is binding, though not formally, or even regularly, made." *Planters & M. I. P. Co. v. Webb, supra.*

The trial court was in error in directing a verdict for defendant, and we recommend that the judgment be reversed and the cause remanded for a new trial.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.