Argued July 2, decided July 23, rehearing denied August 13, 1912.

## McALLISTER v. AMERICAN HOSPITAL ASS'N.

[125 Pac. 286.]

CORPORATIONS—STOCKHOLDERS—PROMOTERS' SHARES—RIGHTS AS TO
    CREDITORS.

1. The voting of shares of stock to the promoter of a corporation as a gratuity is beyond the power of its directors.

CORPORATIONS—SUBSCRIPTION TO STOCK—PROMOTERS' SUBSCRIPTION—
    LIABILITY OF SUBSEQUENT HOLDER.

2. Where the promoter of a corporation subscribed for a certain number of its shares, but did not pay anything therefor, he was liable to pay the entire par value to the corporation, and successive owners of such stock were also liable for its unpaid par value.

CORPORATIONS—STOCKHOLDERS' LIABILITY FOR UNPAID SUBSCRIPTIONS—
    LEGAL HOLDERS.

3. Only the legal holder of stock is liable for an unpaid portion of the subscription price, so that a person who took the equitable title of shares as indemnity for liability upon the corporation's note to a bank did not thereby become liable on the stock either to the corporation or to its creditors as owner.

CORPORATIONS—SUBSCRIPTIONS TO STOCK—REQUISITES OF CONTRACT—
    "SUBSCRIBER."

4. Though persons securing shares of stock in a corporation at a price less than par expressly contract that their liability shall be limited to the price paid, and do not formally subscribe to the stock, a subscription is presumed from any agreement or act by which the stock is acquired from the corporation, and such persons are subscribers within Article XI, Section 3, of the constitution, providing that stockholders of all corporations shall be liable for an indebtedness of said corporation to the amount of their stock subscribed and unpaid.

CORPORATIONS—LIABILITY OF STOCKHOLDERS—KNOWLEDGE OF CREDITOR.

5. A creditor who dealt with a corporation with knowledge that part of its shares were issued for less than par value could not complain that the transaction was a frarud upon him.

CORPORATIONS—LIABILITY OF STOCKHOLDERS—ACTIONS BY CREDITORS—
    EVIDENCE—ISSUES, PROOF, AND VARIANCE.

6. In an action by a creditor of an alleged insolvent corporation against certain stockholders to collect unpaid balances due on stock subscriptions, evidence that the plaintiff dealt with the corporation with knowledge that the stock of defendant was by contract nonassessable was properly refused, where the answer was a denial of the transfer of certain shares to a certain defendant, or that he was the holder and owner thereof, and a denial that the other defendants subscribed for stock, but admitting their ownership thereof.

From Multnomah:  WILLIAM N. GATENS, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by E. S. J. McAllister against the American Hospital Association, a corporation, George D. Peters, E. A. Marshall, F. S. Smith and Max G. Cohen, as stockholders of said corporation. Plaintiff herein obtained judgment against the American Hospital Association, a corporation, in the sum of $629.55, and brings this suit against certain stockholders of the corporation, alleging its insolvency, for the purpose of collecting from them the amount of the judgment to the extent of their unpaid stock subscriptions.

The Hospital Association was incorporated on August 8, 1905, with a capital stock of $25,000, consisting of that many shares of the value of $1 each, but it ceased doing business in the year 1907. R. H. Jewell, D. H. Smith, and J. V. Creighton executed the articles of incorporation, and on the same day signed the following statement, which is entered in the book in which are recorded the articles, by-laws, and minutes of the stockholders' and directors' meetings:

"We, the undersigned, do hereby subscribe for shares of the capital stock of the American Hospital Association

in the amount and value set opposite our respective names:

| Date. | Name of Subscriber. | Number of Shares. | Value. |
|-------|---------------------|-------------------|--------|
| Aug. 8, 1905. | D. H. Smith. | 10 | 80c |
| Aug. 8, 1905. | J. V. Creighton. | 10 | 80c |
| Aug. 8, 1905. | R. H. Jewell. | 12,510 | 80c." |

On the same day, after the election of the directors, the board was organized, and, among other things, it was ordered "that R. H. Jewell be voted 15,000 shares of the capital stock as a bonus for promoting, organizing, and installing the system for handling the business"; also at that time there was issued to Jewell certificate No. 1 for 15,000 shares of capital stock and a certificate for 1,500 shares to D. H. Smith and a like one to J. V. Creighton, as transferred from Jewell, and certificate No. 1 was canceled and certificate No. 4 was issued to Jewell for 12,000 shares as the remainder of the shares as evidenced by certificate No. 1. Certificates No. 5 and No. 6 were issued to Creighton and Smith for the amount of their subscriptions, 10 shares each, which appear in the record canceled on their face without transfer, and upon which evidently no payments were made. The corporation was organized and the business conducted without any payments made on the capital stock until November 16, 1905, when defendant Peters purchased from the corporation 1,000 shares for the agreed price of $400. Soon thereafter Geo. A. Carney purchased 1,000 shares, Dr. F. S. Smith 1,000 shares, Geo. A. Carney and his son 500 shares each, and Marshall 1,000 shares at the agreed price of 40 cents a share. Some of these certificates were not issued until March 16, 1906, at which time the board of directors ratified the sales and ordered the issuance of the certificates, and, in effect, authorized the sale of stock at 40 cents a share.

It is admitted in the pleadings and oral proof that defendant Peters is the owner of 2,000 shares, having

succeeded to the 1,000 shares of Geo. A. Carney, though it does not appear from the record that they were reissued to him. Of these 12,000 shares issued to Jewell, 5,000 shares by various transfers came into the hands of Dole on March 19, 1906, by certificates No. 24, No. 25, and No. 27, which were ratified by the stockholders at a regular meeting. On March 27, 1906, Dole, as vice president and manager of the corporation, it being in need of money and evidently without credit, induced Cohen to sign a note with the corporation to the bank for $2,000, which the latter loaned to the former on the credit of Cohen, and as a part of the arrangement Dole transssferred to Cohen the certificates of stock numbered 24, 25, and 27, representing 5,000 shares, to indemnify him against his liability on the note. Cohen afterwards paid about $1,600 on the note, but made no effort to enforce his lien upon the stock except that on May 21, 1906, he surrendered to the company certificate No. 25, which was for 1,000 shares and had certificate No. 30 issued to him therefor. Upon the trial the court rendered a decree dismissing the suit, and plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellant there was a brief over the names of *Mr. R. F. Peters, Mr. A. E. Clark* and *Mr. M. H. Clark,* with an oral argument by *Mr. Peters.*

For respondents there was a brief over the names of *Mr. J. T. McKee,* and *Messrs. Cake & Cake,* with an oral argument by *Mr. McKee.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. The voting of this 15,000 shares of stock to Jewell, although referred to as a bonus, was, in fact, a gift, and exceeded the amount of the unsubscribed stock. This act was beyond the power of either the stockholders or directors, at least as against the creditors of the corporation. The promoters of a corporation cannot issue to

themselves capital stock of the corporation as a gratuity. The capital stock represents the capital in the business, stands as the guaranty to the public of its ability to meet its obligations, and is not subject to disposal at the whim of the promoters or directors. It is said in *Macbeth* v. *Banfield,* 45 Or. 553, 564 (78 Pac. 693: 106 Am. St. Rep. 670), in discussing the liability of the stockholder:

"His liability is to the full amount of the capital stock subscribed. * * The obligation is to pay in money. * * It must be the equivalent of the par value of his stock, * * and it is a natural sequence that, if stock liability is to be discharged in property, the property should measure up to a money value. Such is no doubt the plain intendment of the laws; otherwise, it might easily be so managed that stock subscribers would be virtually exonerated from their statutory liability by pretended and simulated agreements with the directors, and the corporation left without assets of material moment from the beginning, which would atrociously belie the representations made by the articles of incorporation touching the capital stock. * * The common declaration (of the law) being that the stock must be paid in money or money's worth."

2. However, it is not necessary to determine the status of the bonus stock as Jewell subscribed for 12,510 shares —a majority of the stock—for which, as between him and the corporation, he was liable and undertook to pay the par value; and, as the corporation could not be organized until half the stock was subscribed, 12,510 shares of the 15,000 issued to Jewell was the amount of stock subscribed by him, and the successive owners of it were also liable for its unpaid par value.

3. Cohen only became the owner of the 1,000 shares transferred to him by certificate No. 30, and it is only the holder of the legal title to the stock who is liable for the unpaid subscription. *Branson* v. *Oregonian Ry. Co.,* 10 Or. 278; 4 Thomp. Corp, § 4902. Cohen, as the equitable owner of the other 4,000 shares held by him as

indemnity for liability upon the corporation's note to the bank, did not become liable thereon to the corporation or the creditors as owner. This is expressly decided in *Branson* v. *Oregonian Ry. Co.*, and affirmed in the same case in 11 Or. 163 (2 Pac. 86). See, also, *Powell* v. *W. V. R. R. Co.*, 15 Or. 401 (15 Pac. 663). As to the 1,000 shares represented by certificate No. 30, Cohen is liable thereon for the unpaid par value thereof.

4. Defendants Peters, Smith, Marshall, and Carney, from whom Peters acquired 1,000 shares, did not subscribe for the stock in the ordinary way, but purchased at an agreed price. There is a great diversity of opinion in the decided cases as to whether upon the purchase from a corporation of original stock at less than par the purchaser is liable for the amount unpaid to creditors of the corporation in case of its insolvency; many authorities holding that he is. It is said in *Jackson* v. *Traer,* 64 Iowa, 469, 476 (20 N. W. 764: 52 Am. Rep. 449) :

"If the rule shall be adopted that directors may issue stock upon the receipt of any sum, no matter how small, and provide that the stock shall be treated as fully paid, or, what is the same thing, that the remainder of the par value shall never be called for, no person could safely subscribe for stock in an incorporated company. However well conceived the enterprise might be, and however judiciously the company might be organized, it would involve nothing but peril, if the directors at their pleasure can be allowed to fritter away the authorized capital of the company and curtail its resources in the mode in question." *Vaughn* v. *Alabama Nat. Bank,* 143 Ala. 572 (42 South. 64), and note to this case in 5 Ann. Cas. 667, 4 Thompson, Corp. § 3436, and *Alling* v. *Wenzel,* 133 Ill. 264 (24 N. E. 551.)

There are cases, however, holding that the liability of the shareholder to pay for the stock does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute, and, in the absence of

either of these grounds of liability, it is not perceived how a person to whom shares have been issued as a gratuity has by accepting them committed a wrong upon creditors, or made himself liable to pay the nominal face value of the shares as upon a subscription or contract, except to creditors who have relied upon the representation that the capital stock is as stated; in other words, that it was paid in full. *Christensen* v. *Eno,* 106 N. Y. 97 (12 N. E. 648: 60 Am. Rep. 429) ; *Hospes* v. *Northwestern M. & C. Co.,* 48 Minn. 174 (50 N. W. 1117: 15 L. R. A. 470: 31 Am. St. Rep. 637) ; *Great West., etc., Co.* v. *Harris,* 198 U. S. 561 (25 Sup. Ct. 770: 49 L. Ed. 1163) ; *Clark* v. *Bever,* 139 U. S. 96 (11 Sup. Ct. 468: 35 L. Ed. 88) ; *McDowell* v. *Lindsay,* 213 Pa. 591 (63 Atl. 130) ; 1 Cook, Corp. § 42.

As we have seen, the disposition of the stock by the corporation to defendants was not by formal subscription to the stock, but by a contract of sale for a specific price less than par, but the capital stock of a corporation is presumed to represent the capital in the business, a trust fund in that amount for the benefit of the creditors, and, as to them, the corporation has no authority to make any contract in the disposal of the stock that will reduce its capital, and persons subscribing for stock or otherwise acquiring it from the corporation are bound to take notice of the power of the corporation. This is what is intended by Section 3 of Article XI of the constitution, which provides that "the stockholders of all corporations and joint-stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid." This is well stated in *Macbeth* v. *Banfield,* 45 Or. 553 (78 Pac. 693: 106 Am. St. Rep. 670), where Mr. Justice WOLVERTON quotes with approval from *Hospes* v. *Northwestern M. & C. Co.,* 48 Minn. 174 (50 N. W. 1117: 15 L. R. A. 470: 31 Am. St. Rep. 637) :

"The capital of a corporation is the basis of its credit. It is a substitute for the individual liability of those who own its stock. People deal with it and give it credit on the faith of it. They have a right to assume that it has paid-in capital to the amount which it represents itself as having; and if they give it credit on the faith of that representation, and if the representation is false, it is a fraud upon them."

Therefore the holders of the stock issued as a bonus or gift to promoters, or otherwise disposed of by the corporation for less than par value, are liable accordingly for the par value of the stock to creditors who have acted upon the faith of the capital as represented by the stock.

The principal contention of defendants is that they are not subscribers to the stock and therefore not liable as such for its par value, that they acquired their stock by contract and not by subscription, and that it is non-assessable. It becomes important to determine whether the holder of stock, acquired in such a manner, is liable to creditors for the par value of the stock without a formal subscription to the stock. We have seen that the corporation can make no disposition of the stock or agreement with the holders of it, so far as creditors are concerned, that will relieve the stock from liability. Subscription to the stock is presumed from any agreement or act by which the stock is acquired from the company. It is said in Cook, Corporations, § 52:

"Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation. When one accepts or assumes the position and duties and claims the right and privileges and emoluments of a stockholder, and the corporation accepts or acquieses therein, such person is estopped to deny that he is a subscriber, even though there may have been something irregular or defective in the form or manner of his subscription, or there may have been no formal subscription at all."

And in *Harrison* v. *Remington Paper Co.,* 140 Fed. 385 (72 C. C. A. 405: 3 L. R. A. [N. S.] 954: 5 Ann. Cas. 314), SANBORN, J., says:

"The constitution, the statutes under which the corporation is organized, and the established rules of law in force when he becomes a stockholder are read into and become a part of this contract. By his subscription for the stock, or by his receipt and acceptance of it, he solemnly agrees, in consideration of the benefits derived from its ownership, that he will faithfully perform the obligations and discharge the duties imposed upon a stockholder by the constitution, the statutes, and the law."

See, to the same effect, *Whitman* v. *Oxford Nat. Bank,* 176 U. S. 559 (20 Sup. Ct. 477: 44 L. Ed. 587), and authorities there cited; *Planters', etc., Co.* v. *Webb,* 144 Ala. 666 (39 South. 562) ; *Vaughn* v. *Alabama Nat. Bank,* 143 Ala. 572 (42 South. 64: 5 Ann. Cas. 665) ; *Flinn* v. *Bagley* (D. C.) 7 Fed. 785. Within these authorities defendants or their assignors were subscribers for the stock and liable to the creditors accordingly.

5, 6. Defendants Peters, Smith, and Marshall at the trial offered evidence tending to show that they purchased stock from the corporation at 40 cents on the dollar, and that the stock of Cohen was issued as a gift to Jewell, and therefore contend that as between them and the corporation the stock was nonassessable, and that as plaintiff extended the credit to the corporation for which he seeks to recover here, with knowledge of these facts, he is without remedy as against defendants. A creditor cannot complain unless the transaction was a fraud upon him; that is, unless he dealt in the corporation without knowledge that the stock was issued for less than par value. The evidence to this effect was objected to by plaintiff for the reason that it goes to a matter not in issue, and this objection, we think, was well taken. There

are authorities holding to the effect that creditors cannot complain of the sale of stock by the corporation for less than par value, unless they have been defrauded thereby. See cases above cited on this point. But there is no issue tendered as to the stock being issued as paid in full or as being nonassessable, or that plaintiff extended the credit of the company with knowledge that the stock was issued as nonassessable. The issue raised by the answer is a denial that 5,000 shares of Jewell's stock was transferred to Cohen, or that he is the owner and holder thereof, and a denial that Carney, defendants Peters, Smith, or Marshall subscribed for stock as alleged, but admits their ownership of stock as alleged, and the evidence upon that question was immaterial.

The conclusion is unavoidable that the defendants are liable pro rata to plaintiff for the amount of his judgment against the corporation to the extent of the unpaid par value of stock owned by them or so much thereof as is required for that purpose; that the amount unpaid upon the stock of Peters is $935, upon the stock of Marshall, $475, upon the stock of F. S. Smith, $475, and upon the stock of Max Cohen, $1,000.

The decree is reversed, and one will be entered here as indicated.                    REVERSED: DECREE RENDERED.