WILLIAM M. CLEVENGER, TRUSTEE, v. RICHARD M. MOORE.

Submitted December 5, 1903—Decided June 13, 1904.

1. In a suit by a trustee in bankruptcy in a state court to recover an assessment for the amount remaining unpaid upon a stock subscription, pursuant to an order of the United States District Court, the validity of the assessment cannot be questioned; it is not open to a collateral attack.

2. Where it becomes necessary, in winding up the affairs of an insolvent corporation, to order such an assessment to satisfy the claims of corporate creditors, a court of equity is the proper tribunal; but when the assessment has been ordered in such tribunal, an action at law may be brought against the stockholder to collect his quota. Such a suit may be brought in the state courts of the proper jurisdiction.

3. One may become liable as a stockholder without a formal subscription, or where it is irregular; the contract may be inferred from acquiescence and the acceptance of the benefits of membership.

4. Where the rights of creditors are involved, the issue of stock by the officers of a corporation, as paid for in work and labor, pursuant to the general powers of the corporation, are upheld only where the contract for the rendition of the services payable in stock has been made in good faith, and the services accepted in payment have been put in at a full, fair and *bona fide* valuation.

---

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and SWAYZE.

For the plaintiff, *Joseph H. Gaskill.*

For the defendant, *Samuel Iredell* and *Howard Carrow.*

The opinion of the court was delivered by

HENDRICKSON, J. This is a rule to show cause why a new trial should not be had. The suit was brought by the trustee of a bankrupt corporation to recover of the defendant the

amount remaining due upon stock alleged to have been sub-
scribed for and then held in the bankrupt company pursuant
to the order and direction of the United States District
Court of New Jersey. The number of shares alleged to be
so held was one hundred and four, of the par value of $100.
The plaintiff claimed that no part of the subscription for
the stock had been paid by the defendant and sued to recover
the sum of $10,400. At the conclusion of the plaintiff's
case a motion to nonsuit was made·upon grounds to be
hereafter noted. The motion was denied by the court and
exception to such denial was duly taken and sealed. The
defendant had testified at the call of the plaintiff. The·de-
fence rested without calling witnesses; and thereupon the
plaintiff's counsel, conceding that the defendant, under his
evidence, which was uncontradicted, was entitled to a credit
of cash paid to the company from time to time, amounting
to $2,600, moved the court to direct a verdict for the plaint-
iff for a balance of $7,800, which was done over objection, and
a verdict was rendered accordingly. To this direction ex-
ception was duly taken and allowed and sealed. The con-
tention was, and is, that the defendant was a promoter of the
company; that he had given the company the benefit of his
special and expert knowledge in its organization and con-
duct, which, under an alleged contract with the company,
was to be full payment and satisfaction for the stock; and
that upon these grounds the refusal to nonsuit and the di-
rection of the verdict were erroneous.

It is contended that the refusal to nonsuit was error, be-
cause the trustee made no assessment, but simply demanded
the whole amount due upon the stock. The answer to this
is that the trustee followed the direction of the order of the
United States District Court, which had jurisdiction of the
matter, which was to make the assessment for "the whole
amount remaining unpaid on said stock." The decree re-
cites that the defendant was duly notified of that proceed-
ing. The propriety or validity of that assessment cannot
be questioned collaterally. *Hood* v. *McNaughton, 25 Vroom*

425, 427; *Hawkins* v. *Glenn*, 105 *U. S.* 319; *Cumberland Lumber Co.* v. *Clinton Hill Lumber Manufacturing Co.,* 12 *Dick. Ch. Rep.* 627, 629.

The next ground of error is that this suit can only be maintained in equity. In a suit to wind up the affairs of an insolvent corporation, where it becomes necessary to order an assessment to be made upon unpaid subscriptions of stock to satisfy the claims of corporate creditors, a court of equity is the proper tribunal; but where, in a suit in that jurisdiction, such an assessment has been ordered, an action at law may be brought against a stockholder to collect his quota. *Cumberland Lumber Co.* v. *Clinton Hill Lumber Manufacturing Co., supra; Hood* v. *McNaughton, supra.* It is intimated rather than urged that the suit must have been brought in the United States courts, but this point is clearly untenable. The twenty-third section of the Bankruptcy act of July 1st, 1898, chapter 541, section 23 (30 *Stat.* 552, 553) recognizes the jurisdiction of the state courts over suits brought by the trustee. 5 *Cyc.* 250; 3 *Comp. Stat: U. S.* 3431 (West Pub. Co.) This construction of section 23*b* was sanctioned by the Supreme Court · of the United States in *Bardes, Trustee, &c.,* v. *Bank,* 178 *U. S.* 524.

· The next contention is that the defendant never subscribed in writing for these shares of stock, and that for only four of them did he become obligated under the certificate of incorporation. The answer to this is that the defendant, after denying that he subscribed for more than four shares, testified further that he sold and assigned to Mr. Whitney forty-eight shares out of the one hundred shares of his own original stock in the company; that the stock-book stubs showed the issue of one hundred shares of the stock to the defendant, and that they were signed by the defendant as president of the company; that the defendant, besides being a director and president of the company, also acted as its treasurer, receiving money on account of subscriptions of stock and paying out moneys in its building operations. These con-

ditions continued for several years, and during the whole period of the company's solvency. In a suit brought in the interest of the unpaid creditors of the corporation the defendant cannot now be heard to deny that he became and was a stockholder to the extent of the one hundred shares. This arises out of the principle that is well established that, even without a formal subscription, or where it is irregular, the contract may be inferred from acquiescence and acceptance of the benefits of membership. 26 *Am. & Eng. Encycl. L.* (*2d ed.*) 904, and cases cited.

A further contention is made that the certificates were irregular in being attested by the secretary instead of by the treasurer, as the statute requires. But they were signed by the defendant as president, and he had full notice of the irregularity and made no objection. And since the certificate is not the stock itself but evidence of the ownership of the stock (*Cook Corp.*, § 13; *Lakewood Gas Co.* v. *Smith,* 17 *Dick. Ch. Rep.* 677), the irregularity does not relieve the defendant's responsibility as a shareholder.

The next contention is that defendant was not liable as a stockholder for calls or assessments upon the shares in question, because they were not issued for cash, but were to be given to him for his time and services and for his skill and experience in getting up the glass plant for the purpose of exhibiting glassware in process of manufacture; and that would in effect be an issue of stock for labor and services, or for property purchased, pursuant to section 49 of our Corporation act. By section 48 it is enacted that nothing but money shall be considered as payment of any part of the capital stock of a corporation except, as thereafter provided, in case of the purchase of property. Was there any evidence to sustain the alleged contract to give the $10,000 worth of stock for the labor and services of the defendant? There is nothing found in the minutes nor in the stock-book to show that the payment was to be in property or services of any kind. The minutes showed a resolution passed, authorizing the directors to sell and issue not exceed-

ing $39,000 of stock of the company at par, &c. There is no mention that it could be issued for services or property. There were but four directors, and one of those had not qualified. As before stated, the defendant offered no evidence, and the sole reliance for the proof of such authority is derived from the examination of the defendant. He testified in answer to his own counsel as follows:

"*Q.* Now, when was the meeting of the company held, and where was that meeting held—where it was arranged, as you say, that you were to get one hundred shares of the company?

"*A.* The meeting that it was to be issued was in Cox & Son's office.

"*Q.* Who were present?

"*A.* Mr. Cox and myself.

"*Q.* Anyone else?

"*A.* No, sir."

He further testified that there was a subsequent meeting at the office of the company, at which Mr. Cox and himself and Mr. Minch, another director, were present, and that they just ratified what had been done at the previous meeting. He failed to say what that was, and then testified as follows:

"*Q.* Was this transaction explained—this stock transaction?

"*A.* I can't say; there were several things came up that was very important; some of it that was not."

He was next questioned and testified in this way:

"*Q.* Now, then, what was the arrangement, if there was any?

"*A.* For my experience in the business in promoting the company and for labor and for moneys paid in.

"*Q.* What were you to get for your experience and your labor in promoting the company and money that you had paid in—what were you to get?

"*A.* One hundred shares of stock.

"*Q.* What was Mr. Cox to get?

"*A.* The same——

"*Q.* And Mr. Cox, for his skill and labor, was also to get $10,000?

"*A.* Yes, sir."

As to whether this arrangement was entered into at any of the meetings of the board, the witness fails to say. Nor does it appear that the arrangement ever took the form of an actual agreement, or that it embraced any terms as to valuation of services rendered or to be rendered, or as to what proportion of the amount was to be in services and what in cash, as a consideration for the issue of the stock. Plainly, there is no proof that the stock was issued for property, pursuant to our statute. Is there any proof to show its issue for labor and service under the general powers of the corporation? It is a settled doctrine in this state that transactions of this character, where stock has been issued as paid up in work and labor, pursuant to the general powers of the corporation, are upheld only where the contract for the rendition of services has been made in good faith and the services accepted in payment have been put in at a full, fair and *bona fide* valuation. *Wetherbee* v. *Baker,* 8 *Stew. Eq.* 501.

Applying these principles to the present case, we think the defendant has failed to show that the shares in question were lawfully issued as paid-up stock for labor and services, and hence not subject to the assessment. There is one point, however, wherein we think the trial judge has committed error. The verdict was directed for $7,800; this was on the basis that the defendant was the owner of one hundred and four shares of the stock. This does not appear with such clearness as to justify a direction. While he subscribed for four shares in the certificate of incorporation, he received no certificate for the same apart from the certificate for the one hundred shares. When the defendant was cross-examined he said:

"*Q.* But you say you were to get from the company one hundred shares?

"*A.* Yes, sir.

"*Q*. Were those exclusive of the four shares you got—that you were to get?

"*A*. Inclusive of the four shares."

If the plaintiff will consent to a reduction of the verdict and judgment to the sum of $7,400 the verdict may stand, otherwise the rule will be made absolute and a new trial granted.