# CASES DECIDED

# SUPREME COURT

# OREGON

Argued December 12, 1912; decided January 7, 1913.

## SHIPMAN v. PORTLAND CONST. CO.*

(128 Pac. 989.)

**Pleading—Answer—Conclusions—Issuable Facts.**

1. In an action by a foreign corporation, an answer alleging that plaintiff had not complied with the laws of the State permitting a foreign corporation to do business therein, without stating the facts consituting the alleged default, was improper, as pleading a mere conclusion of law, and not an issuable fact.

**Pleading—Supplemental Complaint—Grounds.**

2. Section 6726, L. O. L., requires foreign corporations to pay certain entry fees, etc., before doing business within the State. Section 6728 provides for the issue of a certificate showing compliance with the law, which is made prima facie evidence of the

---

*On the validity of contracts of foreign corporations before getting permission to do business, see note in 24 L. R. A. 315, and 1 L. R. A. (N. S.) 1041.

As to right to cancellation of contract made with foreign corporation because it has not complied with the laws entitling it to do business within the State, see note in 21 L. R. A. (N. S.) 707.

For the right of a foreign corporation which has not complied with local laws to defend action, see note in 17 L. R. A. (N. S.) 1117.

The question of the effect upon right of foreign corporation to maintain suit, of compliance with local law after suit is instituted, is discussed in notes in 14 L. R. A. (N. S.) 561, and 23 L. R. A. (N. S.) 492.

REPORTER.

corporation's right to do business, this, however, being required to be accompanied by a receipt of the State Treasurer for the last annual license fee for which the corporation is liable. Section 6708 declares that no corporation while delinquent in the payment of such fees shall maintain any action in the courts of the State. Held, that failure of a foreign corporation to pay the fees required did not avoid its contract with another corporation within the State; and hence it was proper for such corporation to file a supplemental complaint showing compliance with the statute, and payment of the fees after suit brought.

**Appeal and Error—Review—Amended Complaint—Prejudice.**

3. Defendants were not prejudiced by a ruling authorizing plaintiff to file an amended complaint after the cause had been submitted on its merits, where the decree as finally rendered was not in excess of the relief demanded by the original complaint.

**Corporations—Insolvency—Stockholders' Liability—Unpaid**
       **Stock.**

4. Where it is alleged and proved that a debtor corporation is insolvent, a creditor is not required to reduce his claim to judgment at law, and have an execution returned unsatisfied before suing in equity to enforce stocholders' liability for unpaid stock.

**Corporations—Insolvency—Unpaid Stock—Rights of Creditors—**
       **Services.**

5. Section 3, Article XI, of the Constitution, provides that stockholders shall be liable for the indebtedness of the corporation to the amount of their stock subscribed and unpaid, and no more. Held, that where stockholders of a corporation contracted to pay in advance, as called on by the board of directors, for the number of shares of stock they subscribed, a resolution of the directors authorizing the issuance of the stock subscribed for to such stockholders in return for future services to be rendered to the corporation, without proof as to what the services were or their value or character, was insufficient to show that the stock was fully paid as against creditors of the corporation after it had become insolvent.

**Contracts—Services—Performance—Construction.**

6. A contract for engineers' services in aid of a railroad provided that the engineers agreed to form a pool to subscribe $35,000, to be paid into defendant corporation's treasury for that amount par value of defendant's stock, with certain additions,

but that, in case the engineers could not raise the $35,000 cash, the contract should terminate, except that the engineers agreed to subscribe $7,000 to the defendant company's stock, and that their services should apply only to the first section of the road to be built, entailing a fee of $15,000, of which the $7,000 should be considered a payment to that amount on the stock, leaving a balance of $8,000 due them on delivery of the plans for the construction of the first section of the road. Held, that the covenant to organize the $35,000 pool was not a condition precedent to their right to recover the balance of the $15,000 fee for their services.

#### Corporations—Stock Subscription—Effect.

7. Where a contract for engineers' services in the construction of a railroad provided that payment for their services rendered with reference to the first section of the road to the extent of $7,000 should be made by delivery of stock in defendant corporation to that extent, it constituted a subscription for defendant's stock to such amount.

#### Corporations—Insolvency—Unpaid Stock—Creditor's Knowledge.

8. In a creditor's action against stockholders of an insolvent corporation to enforce liability for unpaid stock, evidence held insufficient to show that the creditor had knowledge that the corporation's stock was unpaid at the time the debt was created.

#### Corporations—Stockholders—Unpaid Stock—Liability.

9. Liability of stockholders of an insolvent corporation for the amount on their unpaid subscriptions imposed by Section 3, Article XI, of the Constitution, is individual, and not joint; and hence, though several stockholders are jointly sued and join in the same answer, they are not subject to a joint decree, but a separate decree must be rendered against each for the amount of his separate liability.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by Shipman, Denny, Rhame & Company, a corporation, against the Portland Construction Co., a corporation, J. R. Bowles, Homer I. Keeney, Mark W. Gill, H. J. Martin, O. B. Hathaway, W. F. Hurlburt, J. H. Carpenter, and Oregon Gold Prospecting & Promoting Co., a corporation.

The plaintiff is a California corporation of consulting engineers and the defendant Portland Construction Company is an Oregon corporation. On August 14, 1908, the Construction Company, as party of the first part, entered into a contract with the plaintiff, as party of the second part, by which it was provided in part:

"That the said party of the first part being about to undertake the construction and installation of approximately two hundred miles of electric railroad in central Oregon, with the necessary appurtenances of dams, power plants, transmission lines, etc., herewith engages the said party of the second part to serve as its engineers in the matter of the said construction and installation throughout the whole work from surveys to completion; and to have complete charge of all engineering matters, with the single exception of the structural steelwork of dams and bridges, upon the following terms and conditions: (1) That the party of the second part agrees to form a pool on or before September 1, 1908, to subscribe to $35,000 cash to be paid into the treasury of the Portland Construction Company, and for which the said Portland Construction Company agrees to deliver to the said pool $35,000 of its common stock, of the par value of one hundred dollars per share, fully paid and nonassessable, and in addition thereto thirty 'participating certificates' of the Oregon Gold Prospecting & Promoting Company, carrying certain dividends or profits, all in accordance with a contract of even date, between said Portland Construction Company and B. Carroll Shipman. (2) That it is fully understood and agreed by the parties hereto that the work covered by this contract is to be undertaken and prosecuted in sections or divisions, and that, for the purpose of estimate and payment, each section of the work is to be considered by itself, payments from the said party of the first part to the said party of the second part being made in accordance with the terms below, only upon such sections as may have been fully designed and set forth in the plans and specifications submitted. (3) That in consideration of services in securing the above-mentioned subscription on the part of Shipman, Denny, Rhame & Company, party of the second part, to the stock of Portland Con-

struction Company, and of the further services as engineers in accordance with this contract, the said Portland Construction Company, party of the first part, its assigns or successors, agrees to pay to the said Shipman, Denny, Rhame & Company, party of the second part, its assigns or successors, a total fee of five per cent on the actual cost in labor and material of the electric railroad with all its appurtenances before mentioned except structural steelwork on bridges and dams; payment of the said five per cent fee to be made as follows: Upon the presentation to the party of the first part, or its representative, of one complete set of plans and specifications with the estimate of cost of any section of the work as before mentioned (the first section being from Condon to John Day River), prepared as set forth below, a partial fee of $15,000 the said fee to be due and payable in cash at the time of the presentation of the plans and specifications; the balance of the above-mentioned five per cent total fee to be paid in monthly installments in proportion to the work done, and based on engineer's estimates. It is expressly agreed and understood that the payments herein mentioned in any specific instance are to cover only that particular section of the work for which plans, specifications and estimates are submitted, and that payment for no more than one section shall be made until the contract is let for first section. (4) As the party of the first part desires to start the surveys of the first section of the work between Condon and the John Day River at once, before it is possible to obtain the actual payment of the above-mentioned $35,000 into the treasury of the Portland Construction Company and the party of the second part agrees to begin work at once and to prosecute it with all diligence in accordance with this contract, and it is hereby agreed and understood, that if the said Shipman, Denny, Rhame & Company shall not be able to cause to be delivered to the said treasury of the Portland Construction Company all of the said $35,000 in accordance with the foregoing provisions, then, and in that event, this contract shall be void and of no effect, except as hereinbefore provided, to wit, the said Shipman, Denny, Rhame & Company, party of the second part, agrees to subscribe for themselves to $7,000 worth of said stock of the Portland Construction Company, carrying with it six 'participating certificates'

of the Oregon Gold Prospecting & Promoting Company
and a proportionate amount of dividend stocks and
bonds, the subscription to be paid for in cash or services,
as elected by the said Shipman, Denny, Rhame & Com-
pany, and they further agree to use their best efforts to
obtain subscriptions to as much of the $35,000 above-
mentioned subscription, as possible, and in consideration
of such subscription by the said Shipman, Denny, Rhame
& Company, the said Portland Construction Company,
party of the first part, hereby agrees to engage the serv-
ices of the said Shipman, Denny, Rhame & Company as
engineers of the first section to the John Day River, to
wit, where said river intersects the north line of the land
of Prineville Land & Livestock Company, about one and
one-half miles above the mouth of Pine Creek only, of the
above-mentioned electric railroad upon the same terms
and conditions otherwise as stated in this contract for
the complete work."

The contract then provides in some detail what shall
be performed by the plaintiff in the way of examining
conditions, furnishing plans, specifications, bills of
material, estimates of cost of construction, and equip-
ment of the proposed road, and further provides as
follows:

"And upon presentation to the first party by second
party of such plans, specifications, surveys, estimates,
etc., for said section, second party shall be entitled to
payment of the sum of $7,000 forthwith, unless second
party shall have elected to pay its subscription of $7,000
par value of stock of first party in services in which event
upon completion of such plans, etc., second party shall
be entitled to be credited upon subscription the sum of
$7,000, and failure to pay such subscription in cash on
or before September 1, 1908, will be deemed an election
to pay in services. If within two weeks after the presen-
tation of such complete plans, etc., to first party actual
construction work shall not have been commenced and
prosecuted with reasonable diligence thereafter, then and
in that event, there shall become due and payable to
second party the further sum of $8,000, which payment
when made will be in full and complete settlement and
discharge of all liability to second part under this con-

tract, if said railroad is not constructed, but if constructed by first party the second party shall be entitled to receive in the aggregate five per cent of cost of labor and material as hereinbefore specified, and if construction work is begun within two weeks after the presentation to first party of said plans, etc., and such work is thereafter diligently prosecuted then and in in that event second party shall be entitled to receive 5 per cent of actual cost of labor and material of said first section to John Day River, from which shall be first deducted the sum of seven thousand dollars aforesaid, and the balance shall be paid in monthly installments as hereinbefore specified. And it is also agreed that as soon as surveys, etc., are completed from Condon to Mayville, second party shall deliver to first party such surveys, plans, estimates, etc., and again when said surveys are completed to Fossil, the surveys, etc., shall be delivered to first party in order to enable first party to prepare for construction work."

On September 20, 1909, the plaintiff filed a complaint against the other party to the contract, together with certain stockholders of the defendant Construction Company, and alleged, in substance, that the plaintiff had performed its part of the contract, and, although frequent demands had been made upon the Construction Company for the payment of the sum of $8,000 claimed to be due the plaintiff here under the contract, nothing had been paid except $4,050, and there was a balance due the plaintiff from the Construction Company amounting to $3,950, together with accrued interest. The complaint then goes on to state:

"That prior to August 14, 1908, and subsequent to the incorporation of defendant Portland Construction Company, the defendants J. R. Bowles, H. I. Keeney, Mark W. Gill, H. J. Martin, O. B. Hathaway, W. F. Hurlbert, J. H. Carpenter, and the defendant the Oregon Gold Prospecting & Promoting Company, subscribed for a certain amount of the capital stock of the defendant Portland Construction Company, but failed and neglected to fully pay for the same in accordance with their respective subscriptions, and that there now remains due and unpaid from the defendants last above named, on account of the

unpaid subscription to the capital stock of the said company, an amount sufficient to pay the claim and demand of the plaintiff herein, but that the exact amount of the unpaid balance of subscriptions to said capital stock is a matter peculiarly within the knowledge of the defendant, and that the plaintiff has no definite or complete knowledge as to the same, that the defendant the Portland Construction Company is now and since the 1st day of January, 1909, has been, wholly insolvent and without any assets or property of any kind; that this suit is brought for the benefit of the plaintiff and of such other creditors of Portland Construction Company, if any, as shall come into this suit as parties plaintiff; that the plaintiff is informed and believes, and therefore alleges the fact to be, that certain of the defendant stockholders above named are insolvent and unable to respond to an order, decree, or judgment of this court directing them to pay funds or moneys in any sum whatsoever to the plaintiff, but that the plaintiff is unable to state how many or which of said defendants are so insolvent."

The prayer of the complaint is for a declaration of the insolvency of the Portland Construction Company, ascertaining the amount of indebtedness of that corporation to the plaintiff, and to such others as may come into the suit and the amount due and payable from the defendant stockholders on account of unpaid balance of the capital stock of the Construction Company determining which of the stockholders are solvent and which are insolvent, and, after determining the amount of indebtedness from the defendant corporation to the plaintiff, to require the stockholders to pay the same in proportion to the respective amounts of their unpaid subscriptions and for general relief.   Afterwards, on March 26, 1910, the plaintiff filed a supplemental complaint in which it alleged as matter occurring after the filing of the original complaint:

"That plaintiff has filed with the Secretary of State of the State of Oregon a duly and legally certified copy of its articles of incorporation, a power of attorney designating and appointing an attorney in fact in the State of Oregon upon whom a lawful and valid service or process

may be made and a written declaration of its desires and purposes to engage in business within the State of Oregon, and has done all things necessary and proper to be done and in acordance with the laws of the State of Oregon to authorize and permit it to do business within the State of Oregon, and has paid all filing fees, license fees, and other taxes and fees required to be paid by it as a foreign corporation, and has paid the last annual license fee due and payable from it to the State of Oregon as required by law."

The appearing defendants demurred to the complaint and the supplementary complaint on the ground that the court had no jurisdiction of the subject of the suit, that the plaintiff had not legal capacity to sue, and that the complaint does not state facts sufficient to constitute a cause of action against the defendants or any of them but this demurrer was overruled. The answer of the Portland Construction Company having put in issue all the allegations of the complaint and the supplemental complaint, except the corporate existence of the plaintiff and its own and the execution of the contract already noted, which contract is set out as an exhibit to its answer, stated in substance as its first defense that the plaintiff entered into the contract with them well knowing that the Construction Company had no assets or moneys in the treasury, that the plaintiff did not rely upon the financial standing of the Construction Company or the amount of its capital stock, and that it at all times knew that its capital stock had been fully paid up. It also charged that the plaintiff failed to perform its part of the contract in obtaining the subscription of $35,000 cash for stock, so that the defendant stockholders were compelled to and did advance the sum of $1,500 in order to enable the defendant Construction Company to meet its obligations. In the second separate answer in the most general terms without any specifications the Construction Company charges that the plaintiff never complied with the

contract so as to make the defendant liable thereunder.
A third defense is in these words:

"That the plaintiff, to wit, August 14, 1908, and a long
time prior thereto, was a foreign corporation, and that
on said date had not complied with the laws of the State
of Oregon permitting a foreign corporation to do business
within the State of Oregon, and that said plaintiff with-
out having complied with the laws of the State of Oregon
permitting or allowing it to do or transact business within
this State did unlawfully and contrary to the laws and
public policy of this State undertake to do business within
the State of Oregon without in any respect or manner
complying with the laws of the State of Oregon, said
plaintiff, a foreign corporation doing business within this
State, and in pursuance thereto, undertook to enter into
the contract set forth and referred to in the plaintiff's
complaint, and the same contract upon which this suit is
founded, and this defendant without any knowledge with
regard thereto and without being advised as to whether
or not the said plaintiff was authorized to do business
within the State of Oregon, but being misled by the plain-
tiff—that is to say, that the plaintiff assumed and led this
defendant to believe that it had in all respects complied
with the laws of the State of Oregon—and thereby in-
duced this defendant to enter into the said contract which
is the same contract sued upon, and referred to in plain-
tiff's complaint herein, and that this defendant alleges
that this plaintiff had not at or prior to the time of the
making of said contract complied with the laws of the
State of Oregon, and had no authority or right or power
to transact or do business within this State, and by reason
of these facts this defendant says that said contract sued
upon in this suit as absolutely void and of no effect, and
that no suit or action can be maintained thereon."

The defendant stockholders, Bowles, Gill, Carpenter,
Martin, and Keeney, answered the complaint separately.
They admitted the corporate character of the plaintiff, and
denied the other allegations of the complaint and the sup-
plemental complaint, except as otherwise admitted in
their answer. They avowed holding and owning shares
of the capital stock of the Construction Company, but

said that all those shares had been fully paid for by the defendants. Their answer then proceeds thus:

"That at the time of the entering into the contract set forth in the complaint herein the plaintiff well knew that there was no money or other assets in the treasury of the defendant Portland Construction Company, and that said corporation had yet to be financed and put upon a substantial and working basis. And these defendants further say that at the time of the entering into the contract sued upon in this suit between the plaintiff corporation and the Portland Construction Company it was agreed by the plaintiff, among other things, that these defendants were not to be held for any liability to the plaintiff by reason of said contract or otherwise, but, on the contrary, the plaintiff waived any liability against these defendants, and was to look to the Portland Construction Company for payment without reference to any liability of these defendants as stockholders in said Portland Construction Company, and said plaintiff for its payment for any indebtedness which should become due from the Portland Construction Company to the plaintiff on the contract sued upon herein or otherwise was to and agreed to depend upon the financing of the Portland Construction Company for its money—that is, for any indebtedness due or to become due the plaintiff by virtue of said contract or otherwise—and under no circumstances were these defendants to be liable as stockholders, the plaintiff being advised that the defendants herein had received or were to receive the stock subscribed for by them for their individual services to the Portland Construction Company, and that the defendants were to render their services to promote the defendant Portland Construction Company, all of which the principal knew and the plaintiff accepted and entered into the contract sued upon herein with full knowledge and express understanding that these defendants were not liable to the Portland Construction Company, or otherwise, for any subscription stock in said Portland Construction Company, and these defendants say that it would be inequitable and contrary to the agreement made by the plaintiff at the time of the making of the contract to hold these defendants liable to this plaintiff, and that this plaintiff ought not to have judgment to recover against these defendants for any amount. * *

These defendants further allege that the plaintiff in entering into the contract aforesaid did not in any way rely upon the personnel of said defendant Portland Construction Company, or the amount of the capital stock of said defendant, and well knew at that time that the stock held by these defendants in said corporation had been fully paid for."

As in the defense of the Portland Construction Company, the answering stockholders charged that the plaintiff failed to carry out its share of the agreement in obtaining the subscription of $35,000 of the stock of the Construction Company. The replies of the plaintiff traverse the answers of all the defendants in material particulars. After the case had been heard by the court and taken under advisement, the plaintiff applied for leave and was granted permission to file an amended complaint over the objection of the defendants. In addition to the allegations of the original complaint and supplemental complaint, the amended pleading set forth that at the time of the completion of its contract and demand for the payment of the initial installment of its compensation the defendant had no stock which it could deliver for the $7,000 subscription. After stating particularly the number of shares of stock held by each of the defendant stockholders, the prayer was substantially the same as in the original complaint. A motion to strike out the amended complaint was overruled. Afterwards the court rendered a decree in substance that the Portland Construction Company had been insolvent ever since January 1, 1909; that it was indebted to the plaintiff in the sum of $3,950, together with interest specified; that the individual defendants were indebted to the Construction Company on account of unpaid subscription to its capital stock in the amount of $5,000 each, and awarded a decree against these answering defendants jointly for the amount found due to the plaintiff from the construction company. The defendants have all appealed.

                                   MODIFIED AND AFFIRMED.

For appellants there was a brief over the names of *Mr. Thomas O'Day* and *Mr. John M. Haddock,* with an oral argument by *Mr. O'Day.*

For respondent there was a brief over the names of *Messrs. Kollock & Zollinger,* with an oral argument by *Mr. John K. Kollock.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The defendant Portland Construction Company alone attempts to challenge the right of the plaintiff to appear in the courts to enforce the contract sued upon. Reduced to its lowest terms, its answer in that respect in so many words states that the plaintiff, a foreign corporation, has not complied with the laws of the State of Oregon permitting a foreign corporation to do business within the State of Oregon. That pleading as quoted above states no issuable fact, but only conclusions of law. It is not there stated whether or not the plaintiff had paid the fee or tax required, or had filed its articles of incorporation, or appointed an attorney, or done any of the things required by statute in such cases. The answer should have set out the facts relied upon so that the court could have drawn the conclusion of whether or not the plaintiff had complied with the laws of the State on that subject. The only available form in which the question is presented is upon the traverse by the defendants of the allegations of the supplemental complaint already quoted. By documentary evidence in the record emanating from the office of the Secretary of State and of the State Treasurer, this allegation is amply proven. How, then, is the case affected by the fact that the power of attorney and certified copy of the articles of incorporation were filed after the execution of the contract relied upon by the plaintiff, and that the filing fees, license fees, and other taxes and fees were paid after the commencement of this suit?

2. Section 6726, L. O. L., requires, in substance, that every foreign corporation, before transacting business within this State, shall file a declaration and pay certain entrance fees, and shall execute and acknowledge a power of attorney appointing some citizen of the State its attorney in fact, authorized to receive service of writs, process, and summons necessary to give complete jurisdiction of the corporation. Under Section 6728, L. O. L., a certificate is required to be issued to a corporation complying with the requirements of the law, and such certificate shall be *prima facie* evidence of the legal existence of the corporation and of its right to engage in the transaction of business within this State. It is provided, however, that this certificate shall not be admissible in evidence, unless accompanied by a receipt of the State Treasurer showing the payment in full of the last annual license fee which shall have become due and payable against the corporation, or a certificate of the officer that there are no such fees due. It is said in Section 6729, L. O. L., that, in default of payment of the fee required by the section already noted, the offending corporation shall not be permitted to maintain any suit, action, or proceeding in any court of justice in this State until such declaration shall have been filed and the fees paid. It is also declared in Section 6708 that:

"No domestic corporation, no foreign corporation, joint stock company or association which shall have failed to pay the last annual license fee or any other tax or fee which shall have become due and payable against it as provided in this act or any other law of this State shall be permitted to maintain any suit, action or proceeding in a court of justice in this State while such delinquency shall continue. * * While such delinquency shall continue the right of such delinquent corporation, company or association to transact business shall be deemed to be in abeyance and such corporation, joint stock company or association shall not be permitted to maintain any suit, action or proceeding in any court of justice

in this State. * * The certificate of the Secretary of State under the seal of the State that any corporation is in default in the payment of the tax or license fee shall be conclusive evidence of such delinquency in any court of justice * * subject to be overcome, however, by a like certificate that such delinquent tax or license fee with interest and penalty has been paid since the issuing of the certificate of delinquency."

It is provided in Section 6709, L. O. L., that:

"A plea that any domestic corporation or any foreign corporation, joint stock company or association has not paid any tax or fee required by any law of this State and which is then due and payable may be interposed at any time before trial upon the merits of any action, suit or proceeding and if issue be joined upon such plea the same shall be first tried."

It is easy to conceive a case where a foreign corporation which has fully complied with all the provisions of the statutes on that subject has commenced a suit in the courts of this State pending which another annual tax or license fee has become due. While the suit is waiting trial the plaintiff is amenable to the plea mentioned in Section 6709, which could be interposed at any time before the final submission of the case. The certificate of the Secretary of State would go in proof of the corporate delinquency, and this certificate may, in turn, itself be overcome by subsequent certificate of that officer that the license fee or tax previously unliquidated has been paid, with interest. This would certainly defeat the plea in abatement entered *pendente lite,* and allow the action to proceed to trial on its merits. The statute under consideration is penal in its nature. Indeed, under Section 6707, a corporation failing to comply with the terms of the statute is liable to a fine of $100 to be recovered with any license fee due by an action in the name of the State. Such statutes are to be construed strictly, and are not to be extended beyond their express terms. The statute does not say that the contracts of

the corporation made under such circumstances are void. It only says that, while the delinquency shall continue, the corporation shall not be permitted to enforce its contract by any suit or action in the State courts. Section 6708 expressly says that the delinquency of such corporation shall not operate to impair or delay the rights of any other person, firm, or corporation. This practically amounts to a declaration that the contract is not void because if void as against one person it would be void against all. The plain object of the provisions of the statute in thus denying delinquent corporations admission to the courts is to aid in the collection of the fees and taxes claimed by the statute. If the reason for the suspension of litigation is removed, the injunction of the statute is also removed, and the litigation should be allowed to proceed to its ordinary conclusion. As indicated in *Hirschfield* v. *McCullach,* 127 Pac. 541, the courts of this State, under the statutes already quoted, will merely refuse their aid to enforce a contract which is a part of buisness transacted here by foreign corporations in violation of these enactments. The present laws do not declare such contracts void, and no decision of this court based on existing statutory conditions has done more than sustain the plea in abatement mentioned when properly tendered. We hold, therefore, that it was competent for the plaintiff to file its supplemental complaint showing its compliance with the statute and the payment of its fees and taxes after the suit had been commenced, and thus anticipate any objection of that nature which might be urged against the prosecution of its litigation. As against any provisions of the revenue laws of the State, the corporation plaintiff was properly in the court in the present case.

3. The defendants complain that the court erred in allowing the plaintiff to file an amended complaint after the cause had been argued and submitted on its merits. This error, however, is rendered harmless by the fact

that the decree of the court as finally rendered was not in excess of the relief demanded by the original complaint.

4. The defendants also urge that the plaintiff has no right to maintain this suit in equity to reach stockholders until it shall first have established its claim by a judgment at law against the Construction Company upon which an execution shall have been returned unsatisfied. The rule, however, has been settled the other way in this State in cases like the one at bar, and, where it appears by allegation and proof that the corporation in question is utterly insolvent, the vain thing of wasteful litigation in obtaining a judgment known in advance to be fruitless will not be required. Under such conditions, which abundantly appear in this case, equity will in one suit dispose of the whole controversy, not only as to the amount due the plaintiff from the debtor corporation, but also how much each delinquent stockholder shall contribute to the liquidation of the plaintiff's claim. *Hodges* v. *Silver Hill Mining Co.,* 9 Or. 200.

It remains to determine whether or not the defendant stockholders were liable for the debts of the principal corporation defendant, the Portland Construction Company. As between the plaintiffs and the individual stockholders defendants, the liability of the latter depends upon two conditions: First, whether or not the individual defendants had fully paid for their stock as subscribed by them; and, second, if the stock was issued to them in whole or in part as a gratuity, whether or not the plaintiff at the time of or before entering into this contract sued upon knew of this condition. In passing, we hold that the suit must be dismissed as to the defendant Carpenter because there is no testimony whatever that he ever subscribed for any of the stock of the defendant corporation.

5. Section 3, Article XI, of the Constitution of this State, declares that:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid and no more."

The records of the corporation, defendant, show that the defendants Bowles, Keeney, Gill, and Martin subscribed to the following agreement:

"We, the undersigned, hereby subscribe and agree to pay for in advance as called upon by the board of directors of the Portland Construction Company, a corporation, the number of shares of stock of the corporation as are set opposite our names."

Each of them subscribed for 50 shares, amounting to $5,000. As to the defendants Keeney, Gill, and Martin, it appears that at the first meeing of the board of directors of which they were members a resolution was adopted by that body to the effect that $5,000 be paid to each director qualifying as such after the organization in payment of the price of 50 shares of the capital stock of the corporation heretofore subscribed for by each of the said directors, and that the president and secretary be authorized and directed to issue 50 shares of said capital stock of the par value of $5,000 fully paid up and non-assessable in full of $5,000 to be paid for their services to each of the following named directors, naming, among others, the defendants Keeney, Gill, and Martin. At a subsequent meeting of the directors they resolved that the sum of $5,000 be paid J. R. Bowles as his salary for one year in advance for services to be rendered as president. In addition to the allegation of the answer that the defendants fully paid for all the shares of stock held by them, the pleading contained the statement that "plaintiff was advised that the defendants herein had received or were to receive stock subscribed for by them for their individual services to the Portland Construction Com-

pany, and that the defendants were to render their services to the Portland Construction Company." It is not stated in the pleading what services or the amount or character of them were to be rendered; neither is it alleged that any services were actually performed. The evidence about that feature is equally vague and indefinite. The testimony of these answering defendants is simply to the effect that they rendered services to the corporation, not stating what they did to constitute service. It is well settled that for actual services of real value a corporation may issue in payment therefor its fully paid-up capital stock, but, in order to support such a transaction, it must clearly appear that the transaction was in good faith for actual services of real value to the corporation. Considering the fact that these defendants were acting in a fiduciary capacity with respect to the corporation and while so acting were dealing with themselves, we hold that the evidence adduced is not sufficient to show that they have paid in full for the stock subscribed. In their contract of subscription the defendants agreed to pay, not to render services as payment. To hold that the future rendition of uncertain services indefinite both as to character and quantity and likewise as to value amounts to payment would be to invite watering of stock and promote preferences in a business where all should have equal opportunity and equal consideration. Sound public policy requires that corporations engaged in the promotion of a public enterprise should be what they actually appear to be, and not a mere hollow seeming. We conclude under the pleading and testimony that as to the 50 shares subscribed for by each of the defendants Bowles, Keeney, Gill, and Martin there was $5,000 unpaid by each of those defendants within the meaning of the constitutional provision already noted. *Torrey* v. *Toledo Portland Cement Co.,* 158 Mich. 348 (122 N. W. 614) ; *Clevenger* v. *Moore,* 71 N. J. Law, 148 (58 Atl. 88).

As to the indebtedness of the construction company to the plaintiff, but little question is made in the testimony. Some criticisms were made as to the practicability of the grades and curves of the lines surveyed by the plaintiff, but these were manifestly afterthoughts. No restrictions were placed upon the discretion of plaintiff as engineers by the terms of the contract entered into as stated in the pleadings. After the plaintiff had performed its work and delivered to the defendant corporation the plans, specifications, details, and estimates of the proposed railway, many letters passed between the contracting parties about making payment of the $8,000 due on the partial fee of the plaintiff. In all that voluminous correspondence no claim is made by the defendant corporation that the work was not properly performed. On the contrary, its records made by these very individual defendants disclose that the work was accepted as presented by the plaintiff. A strong circumstance indicating that they admitted their liability for the $8,000 is shown by the fact that they made strenuous efforts among themselves and raised the sum of $4,050 which was applied on the $8,000 already mentioned.

6. The defendants charge, however, that the plaintiff failed to carry out its part of the contract whereby it agreed to form a pool which would subscribe $35,000 cash for stock of the Construction Company, and that, not having fully performed its dependent covenant in that respect, the plaintiff cannot claim payment for its services stipulated as part of that contract. This provision of the contract, based upon the construction of the whole road designed by the defendant, was not, however, absolute in its terms or to be performed in any and every event. The contract, as already noted, further provided that, in case the plaintiff could not raise the $35,000 cash, the contract should terminate, except that the plaintiff should agree to subscribe $7,000 to the stock of the company, and that their services should apply only to

the first section of the road, entailing a fee of $15,000 of which the $7,000 stock should be considered payment to that amount, leaving a balance of $8,000 due to the plaintiffs on the delivery of plans for the construction of the first section. The testimony shows true efforts on the part of the plaintiffs to procure subscriptions to the capital stock of the defendant company in the full sum of $35,000, but for various reasons not necessary to notice here their efforts failed.

7. As between the parties here the execution of the contract itself amounted to a subscription to the stock by the plaintiff in the sum of $7,000. As stated by Mr. Justice EAKIN in *McAllister* v. *American Hospital Association,* 62 Or. 530 (125 Pac. 286) : "Subscription to the stock is presumed by any agreement or action by which the stock is acquired from the company." So far then as the mere subscription for $7,000 worth of the stock of the defendant corporation is concerned, we hold that portion of the contract for subscribing to the stock as modified by the subsequent clause of the contract has been fully performed by the plaintiff, and the defendants can claim nothing here on account of the alleged nonperformance of the plaintiff's agreement to raise a pool of $35,000 to be subscribed for the defendant corporation's capital stock.

8. The indebtedness of the corporation and the delinquency of the individual stockholders' payment of their subscription to the capital stock having been established, it remains to be seen whether or not at the time of making the contract the plaintiff knew of the actual condition of affairs, and that the stock had been issued to the individual defendants as fully paid up, for, as stated in *McAllister* v. *American Hospital Association,* 62 Or. 530 (125 Pac. 286), "a creditor cannot complain unless the transaction was a fraud upon him; that is, unless he dealt with the corporation without knowledge that the stock was issued for less than par value." The solution

of this part of the controversy depends upon a question of fact about which there is testimony on both sides. In vague and general terms the defendants testified that they informed the representative of the plaintiff of the condition of the Construction Company at the time the contract in suit was executed. On the other hand, this testimony is explicitly denied by the witness for the plaintiff to whom was imputed the knowledge indicated. He says in concluding his testimony:

"It has been testified that we were entirely familiar with the financial condition of the Portland Construction Company. That is not a fact. We knew it was not financed in the sense that the stock was all subscribed and fully paid up. We knew that pretty well, but as to the individual holdings they had or money we knew nothing about them. The way they talked about going along with the work led us to believe that they had enough to pay us for our services, and it was specifically specified in the contract that, if the thing was a failure, our certain, definite, limited amount would have to be paid; that is, for the actual cost of the work in the field. That was thoroughly understood."

In addition to this, in all the mass of correspondence in evidence attending the efforts of plaintiff to get the payment of its claim, no hint is found on the part of the individual defendants that they would not be ultimately liable under the constitutional provision quoted above. On the other hand, the testimony discloses, as already indicated, that among them in some manner they raised and paid on plaintiff's claim several amounts amounting to $4,050. It is not likely that they would have done this unless they were liable for the debt of the corporation by reason of their delinquency in the payment of their subscriptions to its capital stock. Indeed, they do not base their defense squarely upon plaintiff's knowledge that the stock of the defendant Construction Company was inflated as they now would have us believe. On the contrary, they pleaded a 1 express agreement on

the part of the plaintiff that they were not to be held
for any liability on the contract in suit. The contract
itself upon which plaintiff sues contains no such stipula-
tions, and there is no evidence of anything of that kind
reported in the record. Without going further into
detail, suffice it to say that a careful perusal of the testi-
mony impresses us with the conviction that on the issue
of previous notice of conditions the plaintiff makes de-
cidedly the better case. We are fortified in this conclu-
sion by the finding of the trial judge who personally
heard the witnesses and observed their demeanor while
speaking under oath. These are invaluable factors in
determining the weight of testimony of which we are
deprived. In his long experience as an advocate and
afterwards on the bench, the judge who presided at the
hearing became a keen observer of witnesses, and his
estimate of the weight to be given to their statements
has great influence with us on a question of fact.

9. The court, however, was in error when it rendered
a decree against the individual defendants jointly.
Although they joined in an answer to the plaintiff's com-
plaint, it does not necessarily follow that a joint decree
must be rendered against them. The liability of a stock-
holder is individual, and not joint, and it is limited by
the amount of his stock subscribed and unpaid and no
more as the language of the constitution states it. A sub-
scriber to stock engages to put so much capital into a
venture but no more and to extend his liability beyond
the limit he has thus established would be to violate his
constitutional right. The individual defendants might
have answered separately and against their admitted
liability if any they might have offset what payments
they had made on the stock, but in no event can they
be held jointly for the indebtedness of the defendant
company or severally beyond the amount of the unpaid
subscription of each. This is the doctrine set forth in
Ladd and Bush v. Cartwright, 7 Or. 333; Hodges v. Silver

*Hill Mining Co.,* 9 Or. 204; *Brundage* v. *Monumental Gold & Silver Mining Co.,* 12 Or. 324 (7 Pac. 314); *Hawkins* v. *Donnerberg,* 40 Or. 103 (66 Pac. 693, 908).

The amount due to the plaintiff on the decree will remain as computed by the court below, but a decree will be here entered modifying the determination of the circuit court so that each individual defendant, Bowles, Keeney, Gill, and Martin, will be required to pay one-fourth of the amount thus ascertained. The defendant Carpenter will recover from the plaintiff his costs and disbursements, but the plaintiff will recover from the other defendants its costs and disbursements.

MODIFIED AND AFFIRMED.