KENNEBEC HOUSING COMPANY *vs.* CHARLES H. BARTON.

SAME *vs.* HENRY J. COLLINS.

SAME *vs.* ERNEST L. GOVE.

SAME *vs.* EDWARD L. GRONDIN.

SAME *vs.* EDMOND D. NOYES.

Kennebec.    Opinion December 12, 1923.

*A prospectus issued by the authority of the officers of a corporation may be relied upon by a person in subscribing for stock, and if it contains a false representation, and the subscription is made by reason thereof, such representation is binding upon the corporation; but in this class of instruments some high coloring and exaggeration is allowable. When offers to receive subscriptions are made by the company, accepted by the persons to whom the offers are made, and an absolute, unconditional subscription for a definite number of shares is made by each subscriber, with an express promise to pay the par value of the shares, an allotment is not expressly or impliedly required.*

In this case, although the word "purchase" was used in the instruments signed by defendants, the transaction is not to be construed as a sale, but is a subscription to the capital stock. It was so understood by the parties.

The instruments, on which these actions are based, are not mere naked subscriptions; they are contracts made between the corporation soliciting the subscriptions, and the signers who expressly promised unconditionally to pay for the stock at its par value.

Such promises once made are binding, and the promisors cannot now invoke conditions; there is sufficient consideration in the obligation of the company to deliver the shares.

Acceptance of the subscriptions, if necessary, may be inferred. Where, as in the instant case, the corporation solicited the participation of each defendant in the enterprise, and each defendant accepted the offer of shares, and expressly promised to take and pay for a specific number, the elements of mutual assent and consideration were present and the contract was complete when the so-called "pledge card" was signed and delivered to the solicitor authorized to receive it.

Upon the issue of fraud and misrepresentation on the part of the plaintiff, it is incumbent on each defendant to prove that he signed his contract relying

upon representations of existing facts, material to the subject matter of the contract, made by authorized agents of the plaintiff; that such representations were false to the knowledge of the party making them, or, being susceptible of knowledge, were stated as true; that the representations were made to induce each defendant to subscribe, and that each defendant relied upon the representations, in making his subscription.

Mere promissory expressions and predictions, conjectures or other statements as to the future, and future policy of the corporation not determined upon, are not sufficient to sustain the defense.

The principle that the alleged misrepresentation must relate to existing facts, and not matters of opinion, belief or judgment, applies to a prospectus; and if its language fairly construed in the light of the attendant circumstances known to, or open to the knowledge of, the parties, imports only the opinion or judgment of the officers, it is not available to defeat the subscription.

Although the language used refers to the present, yet if the statement relates to future conditions, or to matters and conditions which cannot be foreseen, and therefore by reason of the subject matter must be a matter of opinion or judgment, the subscriber is not warranted in relying on it.

Where two unconnected sentences are selected from a prospectus and alleged to be false, those sentences should be construed with the context and with the remainder of the prospectus.

The court does not find it necessary to pass upon the defendant's contention that the statements of the prospectus relied upon as false, related to existing facts and were not mere matters of opinion and judgment on the part of the officers, because those statements clearly were not relied upon by the defendants in making their subscriptions.

A careful consideration of the entire record convinces the court that the controlling influence with the defendants in making their subscriptions was a desire to participate in an undertaking for the benefit of the community.

On report.   Five actions of assumpsit to recover from the several defendants the amount of their subscriptions to the capital stock of the plaintiff company.   The defendants pleaded the general issue and under a brief statement alleged fraud, misrepresentation and misconduct.   At the conclusion of the evidence, by agreement of the parties, the cases were reported to the Law Court, upon so much of the evidence as was legally admissible, the court to pass upon all issues of law and fact and to render such final judgment in each case as the law and the evidence required.   Judgment in each case for the plaintiff, for the amount of the subscription, with interest on one fourth thereof after ten days from the date of the subscription, and on the balance from February 27, 1920.

The case is stated at length in the opinion.

*Harvey D. Eaton,* for plaintiff.

*Bradley, Linnell & Jones,* for defendants.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

PHILBROOK, J., did not participate.

MORRILL, J.   These actions are based upon five contracts of the defendants individually to pay for shares of stock in the plaintiff corporation; they were before us on a former occasion (122 Maine, 374), presented upon exceptions by defendants to a ruling accepting the report of a referee who had found for the plaintiff, basing his findings upon the issue of fraud and deceit.   The cases are now presented to us upon a report of all the evidence submitted to the referee, for such final judgment as the law and the evidence require.

The pleadings of each defendant present eight distinct defenses, stated as follows:

1.   That defendant never subscribed for nor promised to pay for any shares in the plaintiff company.

2.   That the signature of said defendant was procured and affixed to said subscription card by fraud and misrepresentation on the part of the plaintiff company, its agents and servants, and the defendant as soon as he learned of the same notified the plaintiff company through its officers and agents that he withdrew his subscription.

3.   That the defendant subscribed to said shares of stock on certain conditions to be performed by the plaintiff which conditions were conditions precedent to any liability on the part of the defendant, and which have not been performed by the plaintiff.

4.   That a radical and fundamental change was made by the plaintiff without the consent of the defendant in the character of the original enterprise by which the defendant became released from any promise.

5.   That the enterprise undertaken by the plaintiff was a total failure.

6.   That the affairs of the plaintiff have been recklessly and negligently managed by it, its directors and officers by reason of which all subscribers will lose all money invested in said enterprise.

7. That the plaintiff through its directors and officers has made secret agreements to release other subscribers from their subscriptions, and although a vote was passed to enforce by legal action every unpaid subscription only five suits were brought and entered in court, whereas many others have failed and refused to pay their subscriptions and no action has been taken against them.

8. That the defendant's promise to take shares, if any, was without any consideration.

Upon examination of the entire record which is now before us for the first time, it is apparent that none of the defenses relied upon in support of the former exceptions, are tenable. The fifth and sixth specifications are manifestly unsound as defenses and are apparently abandoned; the seventh is without support in the record. We will first consider the first, third, fourth, and eighth grounds of defense.

The plaintiff was organized under the general laws of this State by eleven associates residing in Waterville, on November 28, 1919; the purpose of the corporation was "To acquire and hold real estate and manage, improve, lease and sell the same, having in view especially the increase and improvement of housing facilities in Waterville, Winslow, Vassalboro, Benton, Fairfield, and Oakland, Maine."

The capital stock was fixed at $200,000, of which $6,500 was subscribed at the meeting of organization. The organization of the corporation resulted from activities of the Waterville Chamber of Commerce and was "a sort of community affair" as characterized by Mr. Noyes, one of the defendants. Early in January, 1920 a concerted effort was made by the officers of the corporation to obtain subscriptions to the capital stock. Notice was given in the local newspaper, and a prospectus was issued over the names of the officers. The subscriptions now in controversy were solicited and obtained by two of the directors, Mr. Libby and Mr. Staples, and each was in the following form:

"KENNEBEC HOUSING COMPANY.

Pledge Card.

I Agree to Purchase Ten Shares of Stock of the Kennebec Housing Company.

Par value, $100. Total $1,000. 25% to be paid 10 days from date, and the balance as voted by the board of directors when needed.

Dated Jan. 13th, 1920

Sign here    C. H. BARTON."

Although the word "purchase" is used in this instrument, it is not to be construed as a sale, but as a subscription to the capital stock. *Lincoln Shoe Mfg. Co.* v. *Sheldon*, 44 Neb., 279; 62 N. W., 480. *Wickwire* v. *Warner*, 174 N. Y. Supp., 811. *Ottawa &c. Railroad Co.* v. *Black*, 79 Ill., 262. *Shipman* v. *Portland Const. Co.*, 64 Ore., 1, 21; 128 Pac., 989. It was so understood by the parties, and counsel for defendants apparently so contends.

But the instrument is not a mere naked subscription; it is a contract made between the corporation soliciting the subscription, and the signer who expressly promised unconditionally to pay for the stock at its par value. The obligation of the signer of such an instrument, as distinguished from the obligation of a mere subscriber, without an express promise to pay, must be considered as settled. In the latter case "he assumes only the obligations imposed by law on such subscriber. He is understood to have agreed to assume a certain percentage of the responsibility of the enterprise, on condition that the amount of the responsibility be made certain and the remaining percentage be assumed by responsible parties. . . . . But a person may in his subscription voluntarily assume any other obligations not forbidden by law. He may waive any and all of the conditions implied by law in a naked subscription. He may impose other conditions, or he may promise payment for his shares without any condition. His promise once made will be binding, there being in such cases sufficient consideration in the obligation of the company to deliver the shares. In such cases, the express promise is to be enforced by an action thereon, and not by an action on a promise implied by law only." *S. & A. Railroad Company* v. *Kinsman*, 77 Maine, 370. In the instant cases the promises were unconditional, and the promisors cannot now invoke conditions; the actions are upon the express promises to pay, and not on promises implied by law, and may be maintained as upon other express promises.

It is strenuously insisted that the contracts in question had not been accepted, and that therefore the element of mutual assent and consideration in each case is wanting. But acceptance may be inferred, *K. & P. Railroad Co.* v. *Jarvis*, 34 Maine, 360, 362; and the record discloses sufficient evidence from which acceptance by the corporation, if necessary, may be inferred. In fact, however, the offer came from the corporation; it voted to open subscriptions for stock; it appointed a committee to solicit subscriptions; it incurred

liabilities relying upon prospective subscriptions; its officers issued an authorized prospectus of the undertaking and published it in the local paper for the purpose of obtaining subscriptions; it solicited the participation of each defendant in the enterprise, and each defendant accepted the offer of shares, and expressly promised to take and pay for a specified number. The elements of mutual assent and consideration were present and the contract was complete when the so-called "pledge card" was signed and delivered to the solicitor authorized to receive it. Upon payment the corporation was bound to deliver the number of shares.

It is also insisted that there was no allotment of shares to the defendants by the company. But an allotment was not necessary. Here were offers to receive subscriptions made by the company, accepted by the defendants to whom the offers were made, and an absolute, unconditional subscription for a definite number of shares by each defendant, with an express promise to pay the par value of the shares. Under such circumstances the subscriptions did not expressly or impliedly require any allotment.

These considerations dispose of the first, third and eighth specifications of defense as untenable. The fourth specification, alleging "radical and fundamental change in the character of the original enterprise," whereby the defendants were released from any promises, is not supported by the record. The facts relied upon in support of this contention were mere statements of opinion as to the future policy of the corporation. There has been no change in the declared purposes for which the plaintiff corporation was organized.

The remaining specification of defense, the second, alleges fraud and misrepresentation on the part of plaintiff and a withdrawal of his subscription by each defendant as soon as he learned of the same. Upon this issue it is incumbent on each defendant to prove that he signed his contract, relying upon representations of existing facts, material to the subject matter of the contract, made by authorized agents of the plaintiff; that such representations were false to the knowledge of the party making them, or, being susceptible of knowledge, were stated as true; that the representations were made to induce each defendant to subscribe, and that each defendant relied upon the representations, in making his subscription. Mere promissory expressions and predictions, conjectures or other statements as to the future, and future policy of the corporation not determined

upon, are not sufficient to sustain the defense; such statements are mere matters of opinion, on which one party can exercise his judgment as well as the other; if a prospective subscriber relies upon them, he does so at his peril.

These principles are too well established to require citation of authorities, and eliminate from consideration here many alleged misrepresentations as to which much testimony has been taken.

Eliminating statements of this character made by canvassers the defense must rest upon the language of the prospectus already referred to. From this prospectus counsel select two sentences and thereon strenuously argue to sustain their contention of deceit. We quote them in full:

### "MATERIALS.

"Practically all lumber and other material necessary for the construction of fifty houses has already been bought at prices which average about two thirds the ordinary market price of such articles. . . . ."

### "FINANCING.

"Stock subscriptions already offered without solicitation and the personal guaranty of the Directors is the basis of the business already done. . . . ."

In considering the alleged misrepresentation, we may take it as conceded that the prospectus in which the statement is found, and an advertisement in the Waterville Sentinel of January 13, 1920 containing a similar statement, were issued with the authority of the officers of the corporation, and that the defendants had knowledge of them. A prospectus so issued by the authority of the officers of the corporation may be relied upon by a person in subscribing for stock, and if it contains a false representation, and the subscription is made by reason thereof, such representation is binding upon the corporation; but in this class of instruments some high coloring and exaggeration is allowable. The sanguine hopes of the promoters of the enterprise naturally find expression in the prospectus. 1 Cook on Corp., 6 Ed., Sec. 143. 1 Morawetz on Priv. Corp. 2 Ed., Sec. 100.

The principle that the alleged misrepresentation must relate to existing facts, and not matters of opinion, belief or judgment, applies to a prospectus, and if its language fairly construed in the light of the attendant circumstances known to, or open to the knowledge of, the parties, imports only the opinion or judgment of the officers, it is not available to defeat the subscription. 1 Morawetz Priv. Corp., 2 Ed., Sec. 99. And although the language used refers to the present, yet if the statement relates to future conditions, or to matters and conditions which cannot be foreseen, and therefore by reason of the subject matter must be a matter of opinion or judgment, the subscriber is not warranted in relying on it. *Bish* v. *Bradford*, 17 Ind., 490. *Brownlee* v. *R. R. Co.*, 18 Ind., 68. *Hallows* v. *Fernie*, L. R., 3 Ch. App. (1867-68) 467. *Railroad Co.* v. *Anderson*, 51 Miss., 829.

The question presented, then, is whether the alleged misrepresentations related to existing facts, or were mere matters of opinion and judgment on the part of the officers. Counsel for defendants contend for the former view. If it were necessary for the decision of the case to pass upon their construction, we should hesitate to hold it tenable. In the first place, the statements quoted do not purport to speak in terms of exactness. The whole project was in an undeveloped and incipient state; it was impossible to determine the amount of materials required for any specified number of houses; no plans for houses had been adopted; no architect had been engaged; no locations for the operations had been selected; building operations could not begin for at least three months; these facts were known to all subscribers; the record presents evidence that the quantity of rough lumber required per house would vary from about 10,000 feet to 18,000 feet, depending upon the type of house. Nor could the statement as to the average cost of materials be other than an estimate, a matter of opinion; the statements only give expression to the theory and opinion of the officers that by quantity buying substantial saving in the cost of the houses could be secured, as stated at length in the prospectus. The sentences under consideration should be construed with the remainder of the prospectus; equally with the context, they reflect the opinions, sanguine hopes and expectations of those interested in promoting an undertaking for the benefit of the community; and we think it should have been so understood by defendants, if indeed they gave any thought to it at the time.

We do not, however, deem it necessary to pass upon defendants' contention as to the statements of the prospectus, because the statements now alleged to be fraudulent, clearly were not relied upon by the defendants in making their subscriptions. Upon this branch, or element, of the case the burden is also upon the defendants, and they have failed to sustain it.

It is easy now, in the light of the difficulties in which the undertaking became involved, to say that had they known that this fact or that fact was, as it later proved to be, they would not have subscribed; but the test is, were they induced to subscribe by a fraudulent misrepresentation. A careful consideration of the entire record convinces us that the controlling influence with them was a desire to participate in an undertaking for the benefit of the community. The testimony of the defendants themselves shows that any attempted withdrawal of their subscriptions was not on account of fraudulent misrepresentations.

Mr. Barton testifies that the reason for giving his notice of withdrawal was lack of confidence in Mr. Morse.

The only inference to be drawn from Mr. Noyes' testimony is that he demanded his card because of dissatisfaction with the annual election.

Mr. Grondin testifies that he withdrew because he "didn't like the way it was being run—poor management."

Mr. Collins did not attempt to withdraw his subscription and evidently relied upon his own judgment in subscribing. Nor does Mr. Gove appear to have withdrawn his subscription; he subscribed because it was represented to be a good business investment.

It is therefore the opinion of the court that the defense fails, and judgment must be rendered in each case for the plaintiff, for the amount of the subscription, with interest on one fourth thereof after ten days from the date of the subscription, and on the balance from February 27, 1920.

*Mandates in accordance with this opinion.*